Staunton.

ARONHIME v. LEVINSON.

September 11, 1916.

Absent, Kelly, J.

1. PARTNERSHIP—*Sale to Partner—Disclosure—Good Faith—Fraud—Burden of Proof.*—A purchasing partner is bound to exercise the utmost good faith in dealing with his partner. He must not only disclose truly any information in his possession that may be called for, but if he perceives that the selling partner is laboring under any mistake which is liable to affect his interest, it is his duty, by fair disclosure, to prevent the harm that may otherwise result from such misapprehension. But in a sale between living partners, if the seller seeks to have the sale set aside on the ground that the purshaser has fraudulently withheld information affecting the sale, the burden is upon the seller to establish the charge by clear and cogent evidence. When the purchaser has proved a complete sale, the law implies good faith and honesty in the contract, in the absence of evidence to the contrary. In every transaction lawful in itself, the law supports a presumption of honesty and good faith.

Appeal from a decree of the Law and Chancery Court of the city of Roanoke. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*E. W. Poindexter, Peters & Lavender* and *A. B. Hunt,* for the appellant.

*C. S. McNulty* and *Hall, Woods & Coxe,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

In the fall of 1909 a partnership agreement was entered into between appellee, S. Levinson, and appellant, Gordon. L. Aronhime, to carry on a retail and shipping liquor business in the city of Bristol, Virginia. By the general terms of the agreement Levinson was to put in the business $3,000 cash, and Aronhime was to devote his time and energy to its management, no part of which was to be borne by Levinson. Aronhime, moreover, contends that it was agreed between them that all expenses of the business, including his living expenses, were to be paid out of the moneys derived therefrom, and that Levinson's original input was to be repaid before any division of profits was made. The parties, however, are not agreed as to the alleged stipulation with respect to living expenses.

From the outset the business prospered, and within two years Levinson's investment had been returned to him, and all expenses, including bills for merchandise, were taken care of and substantial profits divided between the partners. About that time, after considerable negotiation between the partners, Levinson sold his interest in the business to Aronhime for the gross sum of $9,500, all of which has been paid. Levinson had free access to the books, which, though inartificially kept, furnished correct information of the business. Yet, Levinson elected to sell his interest in bulk rather than upon an audit of the books, and with the result that, in addition to the return of his original outlay of $3,000, the sale yielded him a profit of about $10,000.

After the consummation of the sale, Aronhime, as sole owner, continued successfully to conduct the business. Subsequently Levinson filed his bill in equity in the Corporation Court of Bristol against Aronhime,

in which, ignoring the sale, he prayed for a settlement of partnership accounts, that his interests in the business be established, and that the defendant be required to pay him such sums and profits as might be ascertained to be due. At the hearing the court decided that Levinson had "sold all of his interest of every kind and character in the business to Aronhime, and had subsequently accepted the consideration agreed upon and consummated the agreement of sale." The bill, therefore, was dismissed, but without prejudice to Levinson's right to institute such suit as he might be advised to bring to impeach and set aside the sale. Six months later Levinson brought the present suit in the Law and Chancery Court of the city of Roanoke to set aside the sale on the ground that it was procured by fraud and misrepresentation, and prayed that an accounting be ordered.

Levinson appears in the anomalous attitude of charging in his bill that the sale of his interest was procured by the fraud and imposition of his partner, while in his deposition he, with equal positiveness, denies the fact of the sale. Aronhime by answer admits that he drew his necessary living expenses from the business, but denies that it was done improperly or fradulently, or without the knowledge and consent of complainant. On the contrary, he insists that when the business was established it was understood and agreed that his living expenses were to be a charge thereon. He testifies to the truth of that averment, and the books, to which Levinson had access, showed that his living expenses were so paid. The answer puts in issue all the material allegations of the bill, and specifically denies that the contract of sale was in any way procured by concealment, misrepresentations or fraud.

Complainant, at the threshold of the second litigation, was confronted by the decree in the former suit adjudicating the fact of the sale of his interest in the partnership to the defendant—a finding that would have put an end to the controversy but for the reservation in the decree to Levinson, if so advised, to bring a suit to impeach it.

In this case the law and chancery court held that the burden of showing the fairness of the sale "beyond a reasonable doubt" rested upon Aronhime, and being of opinion that he had failed to bear that burden "as he and Levinson directly contradicted each other," annulled the sale and ordered an accounting.

The principle is unquestioned that a purchasing partner is bound to exercise the utmost good faith in dealing with his co-partner. He must not only disclose truly any information in his possession that may be called for, but if he perceives that the selling partner is laboring under a mistake which is liable to affect his interest, it is his duty by fair disclosure to prevent the harm that may otherwise result from such misapprehension. *Sexton* v. *Sexton*, 9 Gratt. (50 Va.) 204. Yet, while the court, in that case, impressed the precept, relief was denied because it did not appear that it had been violated.

In this instance the trial court manifestly has confused the duty of the purchasing partner to make disclosure with the settled rule that in a suit by one living partner against another to set aside a sale of the complaining partner's interest in the business, on the ground that the purchasing partner has fraudulently withheld information affecting the sale, the burden rests upon the plaintiff to establish such charge by clear and cogent proof.

In the Ency. Dig. Va. & W. Va Rep., the rule in respect to presumption and burden of proof of fraud (with authorities in support of it too numerous to be cited) is given as follows: "It is a rule of universal recognition that, except in particular cases, he who alleges fraud must clearly and distinctly prove it, whether by circumstantial or direct evidence. The law does not presume fraud, but on the contrary the presumption is always in favor of innocence and not of guilt, and unless the allegations of fraud are proven, relief will be denied, although it may appear that the defendant has not been perfectly clear in his dealings." 6 Ency. Dig. Va. & W. Va. Rep. 502.

The case of *Farrington* v. *Harrison*, 44 N. J. Eq. 232, 15 Atl. 8, in principle is undistinguishable from this case. It was there held: "To a bill for an accounting by the administrator of a deceased partner against the survivor, alleging that a previous sale of the decedent's interest to the survivor was obtained by fradulent representations and statements of the parnership accounts, a plea of the sale in bar, and a denial of the fraud, does not shift the burden of proving fraud from the plaintiff; and the defendant having supported his plea by proof of the sale without any evidence of fraud or bad faith, and the plaintiff having offered no evidence, the bill should be dismissed." The court in its opinion says: "When the defendant proved a complete sale, the law implied, in the absence of further proof, good faith and honesty in the contract. In every transaction lawful in itself, the law supports a presumption of honesty and good faith. He who asserts the existence of fraud or bad faith asserts the existence of that which is out of the common course of things, and the *onus* is cast upon him to make

proof of his averments, and, as I understand it, the burden of proof on such an issue never changes."

Certainly, in a sale between living partners, that is a correct statement of the rule in this State.

Upon the whole case we are of opinion that the decree should be reversed and the bill dismissed with costs.

Sims, J., dissenting:

I concur in the result of the above opinion to reverse the case, but not in so much of it as rests such reversal on the ground that there is a distinction between the duty of disclosure owing by one living partner to another from such duty of a surviving partner to the representative of a deceased partner. I regard the duty as the same in both cases. Where a selling partner in active charge of the business possesses information not in the possession of his living partner materially affecting the value of the purchase he seeks to make, and the latter relies upon, or the former sees or has reason to believe that the purchasing partner is relying on him for such information, and such selling partner does not make full disclosure of such information to the purchasing partner, and the purchasing partner is thereby misled to his injury, the principle of the doctrine referred to in *Sexton* v. *Sexton*, 9 Gratt. (50 Va.) 204, and *Tennant* v. *Dunlop*, 97 Va. 234, 33 S. E. 620, will apply, and the sale will be set aside. This on the ground that the selling partner in such a situation owes to the other the utmost good faith, because they are not dealing on equal terms, and because a *quasi* trust or fiduciary relationship exists.

The following authorities, among others, sustain the

view that this doctrine is applicable between living partners. There would seem to be no sound distinction in principle between cases where the inactive partner is dead from those where he is living, and none seems to be made in these authorities. See *Sexton* v. *Sexton, supra; Dixon* v. *Paddock*, 104 Va. 387, 51 S. E. 841; *Yost* v. *Critcher*, 112 Va. 870, 72 S. E. 594; *McKinley* v. *Lynch*, 58 W. Va. 44, 51 S. E. 4; *Krebbs* v. *Blankenship*, 73 W. Va. 539, 80 S. E. 948; *Gilbert* v. *Anderson*, 73 N. J. Eq. 243, 66 Atl. 926; *Brooks* v. *Martin*, 69 U. S. (2 Wall.) 70, 17 L. Ed. 732; Parsons on Partnership (2nd ed.) p. 236; 1 Story's Eq. (12th ed.) sec. 220; Shumaker on Partnership, p. 235.

Therefore, in cases where the doctrine under consideration applies, the burden is upon the active and selling partner to show that he has discharged the duty incumbent upon him under this doctrine, Otherwise, the sale is set aside, not on the general ground of fraud, but upon that of a breach of trust—a distinct equitable ground of jurisdiction. It is true the breach of trust may amount to a fraud, but it is none the less a breach of trust. The breach of trust being proved by the plaintiff, his case is made out, as he thereby brings it within the application of the doctrine under consideration, without further proof.

But where the record, as in the case at bar, shows that the purchasing partner expressly declined to consider purchasing on the basis of an inventory value of the business, or to rely upon any information which the selling partner could give, and chose to act and rely upon his individual knowledge of the business and upon his independent valuation thereof, I am of opinion that the principle above referred to does not apply. Hence, the burden of proof was upon the plaintiff in the court

below, not only to allege but to prove fraud on the part of the defendant in the court below, in withholding information affecting the sale. The former having failed to sustain such burden, it is on this ground that I think the decree complained of should be reversed.

*Reversed.*