## Richmond.

### March 15, 1917.

1. EXECUTORS AND ADMINISTRATORS—*Care to be Exercised by Executor or Trustee.*—Nothing more is in general required of an executor or trustee than that he should act in good faith, and with the same prudence and discretion that a prudent man exercises in his own affairs.

2. EXECUTORS AND ADMINISTRATORS—*Advice of Court.*—Although under the terms of the will, a surviving executor had the power to sell the property of his testator without an order of court, yet he had the right, notwithstanding such power, to go into a court of equity for advice and instruction upon the proposition, and having taken that course in good faith, he is fully protected by the order of court under which he acted.

3. PARTNERSHIP—*Purchasing Partner—Burden of Proof.*—A partner, more intimately acquainted with the business of the partnership than his other partners, is required, when he seeks to purchase their interests, to act openly and in good faith. But the burden of proof does not rest on such purchasing partner in a suit brought by the selling partner to set aside the purchase on the ground of fraud.

4. TRUSTS AND TRUSTEES—*Trustee Dealing With Beneficiary—Seeking Independent Advice.*—Where a beneficiary dealing with the trustee has sought and obtained independent advice from a person competent to advise as to the particular transaction, this fact will go far to give assurance of its fairness and to induce a court of equity to uphold it.

5. PARTNERSHIP—*Purchasing Partner.*—The managing partner in a concern sought to buy the interest of a deceased partner from his executor. The executor not relying upon the representations of the managing partner invoked the aid and advice of a court of equity. The court upon the report of a commissioner appointed to investigate the proposition to the effect that the price offered was a good price and advantageous to the beneficiary, confirmed the report and directed the sale.

*Held:* That under these circumstances the burden of proof to show fraud and undue influence would be upon the parties attacking the sale.

Appeal from a decree of the Circuit Court of Elizabeth. City county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Allen D. Jones,* for the appellants.

*Jones & Woodward, R. M. Lett* and *J. W. Read,* for the appellees.

Kelly, J., delivered the opinion of the court.

The record in this cause embraces more than eight hundred printed pages. The case has been well argued, both orally and in the briefs. We have given it careful consideration, and it must now suffice to state briefly the essential facts as we find them and the principles of law governing the same.

In the year 1888, W. N. Armstrong, J. S. Darling, G. A. Schmelz, Geo. S. Schermerhorn and James McMenamin obtained a charter of incorporation for the Powhatan Oyster Company with the purpose of acquiring oyster grounds and buying, planting and selling oysters. It appears that this company took charge of and planted certain oyster grounds theretofore assigned to some of the incorporators, and about the same time made a contract with Frank W. Darling to superintend its out-of-door work, subject to the direction and control of its officers. Shortly thereafter the incorporators decided to abandon the use of the charter and to divide the oyster grounds and oyster business of the company into five equal shares, one to be owned by each of the

persons interested in the company. The grounds were accordingly laid off and assigned in five divisions to each of the parties, but as it was not feasible to equally divide the oysters in this way, each party remained the owner of an undivided interest therein. The business itself was not affected by these changes, F. W. Darling continuing as the superintendent, and the interests of all the parties being held together under the company name and operated under one management. In the course of time, W. N. Armstrong assigned his interest to M. C. Armstrong, and James S. Darling assigned his interest to F. W. Darling. Still later M. C. Armstrong withdrew from the association, receiving an allotment of the oyster ground and a certain sum of money for his share in the oysters. Thus the joint business was reduced to four shares, held, respectively, by James McMenamin, Geo. S. Schermerhorn, Geo. A. Schmelz and Frank W. Darling, the latter remaining also the superintendent or manager.

James McMenamin died in 1901, leaving a will whereby he appointed Henry L. Schmelz and Geo. A. Schmelz his executors. George Schermerhorn died in 1905, his widow succeeding to his rights in the oyster company. Geo. A. Schmelz died in 1911, and Henry L. Schmelz and John Garland Pollard became his administrators.

F. W. Darling was thus left as the sole survivor of the parties originally connected with this enterprise. From the outset he had been, under varying contracts, the manager for all the parties, and was more familiar with the business than any of the others; and under his management it had been quite profitable to all concerned.

Some little time after the death of Geo. A. Schmelz, Darling called on Henry L. Schmelz for the purpose of discussing a settlement of the business; the latter asked him how a settlement could be made, and he replied as follows: "I stated to him that I was perfectly willing to abide by our

understanding among us in the first agreement, or the old agreement—which was that we divide up the oysters—sell the oysters and let me out. I told him I was perfectly willing to do that—sell the oysters—and let each man take his share of the ground. He asked me would I consider purchasing it. I told him yes, I would consider purchasing it * * * I told him that I would consider the purchase of all the interests in the property. I did not mention any price or anything more at that time as to the purchase of it. He stated to me he would take the matter up with Mr. Pollard, and when they were in position to consider an offer would let me know." After the lapse of more than a year, during which time there had been some further negotiations, Darling met Schmelz and Pollard at their request and, upon being asked for his proposition, told them, in substance, that he would give $20,000 in cash for each interest in the property as it stood, oysters, ground and everything connected with it. They requested him to reduce the proposition to writing, which he accordingly did.

At the time this offer was made, there was still pending in the Circuit Court of Elizabeth City county a chancery suit under the style of *McMenamin's Ex'or* v. *McMenamin et al*, which had been instituted by the executors shortly after the death of James McMenamin for the purpose of having a construction of the McMenamin will, and to obtain instructions by the executors as to certain of their duties.

H. L. Schmelz had the power, under the terms of the will, to make the sale, but he preferred to submit the matter to the court, and he accordingly filed his petition in the last-mentioned cause, reciting the proposition made by Darling and asking the instructions of the court. In this petition he recommended the proposition, but showed that he had not accepted it, and would not do so without the approval of the court. This petition named as defendants Mary McMenamin Shepherd and James and John McMenamin, the

children and devisees of James McMenamin, who, under the residuary clause in his will, would be entitled to the property, or the proceeds thereof. Mary McM. Shepherd and James McMenamin were both of age, answered the petition and prayed the court to approve the offer. John McMenamin was not of age, and he filed a formal answer by his guardian *ad litem.* The circuit court referred the question to a commissioner, who took depositions and returned the same along with his report in favor of the acceptance of the offer, and the court thereupon confirmed the report and directed the sale.

The sale was accordingly made, being consummated in July, 1912.

In August, 1913, on the day on which John McMenamin attained his majority, and under circumstances not necessary here to detail, but which plainly show that the executor, Schmelz, acted openly and above criticism, the three residuary devisees, Mary McMenamin Shepherd, James and John McMenamin, made a final settlement with the executor, executing to him their releases and receipt in full.

In October, 1913, the present suit was brought by Mrs. Shepherd and James McMenamin against H. L. Schmelz, surviving executor and trustee of James W. McMenamin, deceased, and Frank W. Darling, charging that the sale to Darling was procured by him by means of undue influence over the executor, and by fraud and misrepresentation on Darling's part, and by negligence or connivance on the part of Schmelz; and the bill charges that the latter is liable to the complainants and to their brother, John McMenamin, who was made a defendant in the suit, for the fair cash value of the property, subject to a credit of $20,000, which was paid to the executor by Darling, and by him in turn paid to the complainants and John McMenamin. No specific relief is asked, however, against the executor in the prayer of the bill, except in so far as it is embraced in the prayer

for general relief; and the special prayer and main purpose of the bill is to have the sale to Darling set aside and require him to account to the complainants and their brother for the value of the property, subject to a credit of $20,000 theretofore paid by him, it being claimed by them that the fair cash value of the property was greatly in excess of the amount which he paid. John McMenamin answered the bill, admitting its allegations, and joining in its prayer.

So far as the case against the executor is concerned, it seems to be free from any sort of difficulty or question.

We find nothing in the evidence to show either negligence or bad faith on his part. A careful consideration of the history of the business and the conduct of Henry L. Schmelz in connection therewith, and particularly in connection with the transaction under consideration, shows that he acted cautiously and prudently, and did nothing to indicate that the confidence reposed in him by James McMenamin, who evidently knew him well and trusted him fully, was violated; and in the negotiation with Darling he certainly acted with no less care than he or any other reasonably prudent man would have been expected to act in his own affairs. This was all that was required of him as executor and trustee.

Professor John B. Minor, in discussing the degree of care required of a trustee, says: "But nothing more is in general required than that he should act in good faith, and with the same prudence and discretion that a prudent man exercises in his own affairs. If more than this were exacted, it would tend to the disadvantage of persons interested in trusts in general because it would discourage competent persons from accepting the administration of trusts." 2 Minor's Inst. (4th ed.), p. 255. See also, to the same effect, 2 Pom. Eq. Jur., sec. 1070; *Elliott* v. *Carter,* 9 Gratt. (50 Va.) 541; *Meyers* v. *Zetelle,* 21 Gratt. (62 Va.), 733; *Davis* v. *Harmon,* 21 Gratt. (62 Va.), 199; *Thompson* v. *Brooks,* 76 Va. 166.

Although the contention is made by the appellants that Schmelz, as surviving executor, did not have the power to sell the property without an order of court, we are of opinion that, under the plain provisions of the will, he clearly did have this power, and that the same was not in any way affected or diminished by the previous proceedings in the above-mentioned suit of *McMenamin's Ex'or.* v. *McMenamin et al.* But it is equally true that, as executor and trustee, he had the right, notwithstanding such power, to go into a court of equity for advice and instruction upon the proposition. Having taken that course in good faith, as we think the evidence shows he did, he is fully protected by the order of the court under which he acted. 2 Minor's Inst. (4th ed.), p. 256; 2 Pom. Eq. Jur., sec. 1064; 21 Cyc. 88.

Coming now to the case as it affects Frank W. Darling, we are of opinion that it likewise must fail.

It is contended most earnestly by counsel for the appellants that, inasmuch as Darling occupied the relationship of a partner to the other parties, and especially in view of the fact that he was more intimately acquainted with the business of the company than any of the other partners, it was his duty to make a full disclosure, and that the burden was upon him to show affirmatively that he did make such disclosure, and that he acted in all respects with the utmost good faith. In the recent case of *Aronhime* v. *Levinson,* 119 Va. 394, 89 S. E. 893, this court, while fully recognizing the rule requiring a purchasing partner to act openly and in good faith, expressly held that the burden of proof did not rest on the purchasing partner in a suit brought by the selling partner to set aside the purchase on the ground of fraud. Conceding, without discussion, that the appellants are right in contending that Darling occupied the relation of a partner to Schmelz, the decision in the *Aronhime Case* is absolutely controlling here so far as the question of the burden of proof is concerned. But were the rule otherwise, the

result would be the same in this case.  Henry L. Schmelz, as executor and trustee under the will of James McMenamin, had been representing the McMenamin interests in this business for eleven years, and, along with John Garland Pollard, his co-administrator, he had been representing another interest in it for about six years.  It is true that Darling was more intimately acquainted with the details and doubtless with the accounts and financial condition of the business than his co-partners, but his co-partners did not rely upon his representations, and resorted to the safest method known to the law in obtaining indepedent advice; they invoked the aid and advice of a court of equity (Schmelz and Pollard, administrators, likewise participating informally in this application to the court).  The case, therefore, in our opinion, is brought clearly within the principle enunciated by Judge Riely in *Tenant* v. *Dunlap*, 97 Va. 236, 33 S. E. 624, as follows: "There is no doubt that where a beneficiary dealing with the trustee has sought and obtained independent advice from a person competent to advise as to the particular transaction, this fact will go far to give assurance of its fairness and to induce a court of equity to uphold it."

In the court proceeding above referred to, the proposition from Darling to Schmelz was, as we have seen, referred to a commissioner, who made a thorough investigation of the proposition, taking the testimony of a number of widely known and experienced oyster men.  Before his investigation was completed, John Garland Pollard, one of the co-administrators representing another interest, indicated that he would like to have some further proof taken, and thereupon the court directed certain additional evidence, and when this was in, the commissioner reported that the price offered was a good price, and that the sale would be an advantageous one for the James McMenamin estate.  The court thereupon confirmed the report, and directed the sale, which was accordingly made.

75

In addition to the report of the commissioner and the approval of the circuit court, we think the proof in the present case shows that the sale was fairly made, and that the price, in view of all the contemporaneous circumstances, was adequate, or at least that it was very far short of the inadequacy which would have to appear under well settled and familiar rules of law to justify an interference therewith in the present case. A most significant, if not a conclusive circumstance, appearing in the record is that the other interests, represented respectively by Pollard and Schmelz, administrators, and by Mrs. Schermerhorn, sold to Darling at or about the same time and at the same price, and are not seeking relief.

It is contended that Darling, during the negotiations leading up to the sale, acquired an undue influence over Schmelz by obtaining a controlling interest in two banks from each of which the latter was drawing a large salary. The evidence, we think, wholly fails to show any attempt on the part of Darling to exercise, or that he in fact possessed, any such undue influence.

The decree complained of seems to us so clearly right, upon the grounds already discussed, that we deem it unnecessary to go into the question as to whether the sale was a private or a judicial sale. Of course, if it was the latter, and we have not perceived why it was not, the present suit would have to fail because it does not meet the requirements of a suit to set aside the decree under which the sale was consummated. See *Harrison* v. *Walton,* 95 Va. 724, 726-7, 30 S. E. 372, 41 L. R. A. 703, 64 Am. St. Rep. 830, and authorities there cited.

Upon the whole case, we are of opinion that the decree complained of is plainly right, and it must be affirmed.

*Affirmed.*