COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bray and Annunziata
Argued at Norfolk, Virginia


DIANE HARRIS RAGSDALE

v.   Record No. 1792-98-1

THOMAS H. RAGSDALE                          OPINION BY
                                   JUDGE ROSEMARIE ANNUNZIATA
THOMAS H. RAGSDALE                          JULY 27, 1999

v.   Record No. 1797-98-1

DIANE HARRIS RAGSDALE


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 H. Thomas Padrick, Jr., Judge

        Carl W. Isbrandtsen for Diane Harris
        Ragsdale.

        Moody E. Stallings, Jr. (Kevin E.
        Martingayle; Stallings & Richardson, on
        briefs), for Thomas H. Ragsdale.


     Diane Harris Ragsdale ("wife") and Thomas H. Ragsdale

("husband") have separately appealed various rulings of the

trial court.  Wife contends the court erred by decreeing in its

amended final decree of divorce that she is not entitled to

receive:  (1) the amount by which her share of the parties'

investment accounts appreciated in value between March 31, 1997

and the date of distribution; and (2) interest on that portion

of the equitable distribution award reflecting her share of

husband's medical practice.  Husband contends the court erred

by: (1) awarding wife child support in excess of the statutory guidelines amount; and (2) awarding wife attorney's fees and costs. We find no error in the trial court's rulings and affirm its decision.

I.

VALUATION AND DISTRIBUTION OF INVESTMENT ACCOUNTS

Husband and wife were married on June 21, 1980 in Memphis, Tennessee. The parties had two children: Anne Lacey Ragsdale, born December 3, 1985, and James Andrew Ragsdale, born May 24, 1987. On August 15, 1995, wife filed a bill of complaint seeking a divorce on the ground of adultery. Husband filed his answer to the bill of complaint on August 30, 1995. On December 8, 1995, the court entered a "Decree Pendente Lite" enjoining each party "from transferring, encumbering or disposing of any marital asset without the prior consent of both parties or leave of this Court." Notwithstanding the entry of the court's pendente lite decree, husband transferred marital funds in several investment accounts to his individual retirement account where the funds lost earnings because of a decrease in the applicable rate of interest.

In order to arrive at an accurate valuation of the funds which had been transferred from the marital accounts to husband's separate account, the parties entered a consent order on April 21, 1997, stating that, "[f]or the purposes of equitable distribution, the plaintiff and the defendant are each

entitled to fifty-percent of the value of all of the marital property." A second consent order entered on the same day provided as follows:

> The starting valuation date in connection with all marital investments and retirement accounts shall be on the date of separation, however, the parties shall submit evidence as to the rate of appreciation of all accounts, so that ultimately, using financial information obtained through March, 1997, the Commissioner shall determine what value each account would have as of March 31, 1997 . . . .

At a May 1, 1997 hearing before the Commissioner, wife introduced an exhibit, prepared with the cooperation of both parties' accountants, showing the value of the parties' investment accounts as of the date of separation,[1] the actual value of the accounts on March 31, 1997, and the "pro-forma" value of the accounts on March 31, which reflected their value after factoring in the appreciation in value the accounts would have generated had husband not withdrawn any funds after the parties' separation. The pro-forma value of the accounts was stated to be $696,265. When wife moved to introduce Exhibit 16, counsel for both parties had the following discourse before the Commissioner:

> [Husband's Counsel]: Mr. Commissioner, I think we have an agreement in theory. There is some mechanism that my client is concerned about how it's going to be done.

_____

[1] The separation date is listed as August 18, 1995.

- 3 -

> If I understand what [wife's counsel] is
> presenting, so the Commissioner understands,
> there's a figure of six hundred and
> ninety-six thousand two hundred and
> sixty-five dollars.  It's my understanding
> that what [wife's counsel's] position is,
> that will be divided equally, with a
> transfer going in a QUADRO to [wife], with
> her receiving credit for assets that are
> already in her name.
>
> [Wife's Counsel]:  That's exactly correct.
> The last two entries [on the exhibit], which
> are the HR-10 entries, are [husband's]
> retirement account.  We will prepare a
> QUADRO and he will transfer fifty percent of
> the value, fifty percent of the value on
> 3-31-97, whatever that math turns out to be,
> fifty percent by way of a QUADRO to [wife].

In his report filed on September 3, 1997, the Commissioner recommended that each party be awarded fifty percent of the value of the investment accounts as of March 31, 1997, which equaled $348,132.50.  The Commissioner did not recommend an award providing for the equitable distribution of any appreciation in the investment accounts accruing after the March 31 valuation date.

Wife filed an exception to the Commissioner's failure to recommend that she be awarded appreciation in the value of her half of the accounts accruing between March 31, 1997 and the date husband transferred the award.  Wife asserted that the failure to make such an award violated the parties' April 21, 1997 consent order, which provided that each party is entitled to fifty percent of the value of all marital property.

- 4 -

In its final decree of divorce entered March 13, 1998, the trial court sustained wife's exception to the Commissioner's report and agreed that wife was entitled to any appreciation in the accounts accruing between March 31, 1997 and the date of the transfer. Both parties sought reconsideration of the court's ruling, after which the court modified the final decree by letter. Citing Code § 20-107.3(A) and Fahey v. Fahey, 24 Va. App. 254, 481 S.E.2d 496 (1997) (en banc), the court reversed itself on the issue of appreciation, according the investment accounts the value which was established at the Commissioner's hearing and ruling that any appreciation enjoyed by the accounts after the valuation date would be awarded to husband as the holder of the accounts.[2]

---

[2] The court's amended final decree of divorce, subsequently entered on July 8, 1998, reads in pertinent part:

> The value of [the] investment accounts as of March 31, 1997, $696,265.00, was agreed upon. Each party is entitled to 50% of the value of the investment accounts, or $348,132.50 . . . .
> The parties have agreed, pursuant to the Consent Order of this Court dated April 21, 1997, paragraph 7, that the plaintiff and the defendant are each entitled to 50% of the value of all marital property, and said investment accounts are marital property.
> The plaintiff is not entitled to appreciation on said investment accounts from March 31, 1997 until the date of transfer or payment of the equitable distribution award. Any appreciation or depreciation of the investment accounts

We find no error in the decision of the court to exclude from wife's award any appreciation of the investment accounts. Wife's reliance on Wagner v. Wagner, 16 Va. App. 529, 431 S.E.2d 77 (1993) (en banc), and Mitchell v. Mitchell, 4 Va. App. 113, 355 S.E.2d 18 (1987), is misplaced.[3] In neither of these cases had the parties agreed to the date upon which the assets in question were to be valued. Indeed, as we noted in Mitchell, the trial court's authority to select a valuation date arises in the absence of an agreement between the parties. See id. at 118, 355 S.E.2d at 21. Here, by consent order, both husband and wife agreed to the date to be used for valuating the investment funds, stating that evidence of their value as of March 31, 1997 was to be presented for the Commissioner's consideration. Moreover, both parties represented before the Commissioner that they had agreed to equally divide the investment accounts by their pro-forma value as of March 31, 1997. The parties are

> shall inure to the benefit (or detriment) of the party holding that asset, for the reasons stated in the Court's letter opinion dated May 18, 1998 . . . .

[3] In Mitchell, we held that, in the absence of an agreement between the parties as to the valuation date of marital property, the trial court must value the property in a manner that will provide the most current and accurate information available and that avoids inequitable results. See Mitchell, 4 Va. App. at 118, 355 S.E.2d at 21. In Wagner, we affirmed the trial court's decision to re-value marital property upon remand of the case because such re-valuation enabled the court to obtain the most accurate valuation and equitable distribution. See Wagner, 16 Va. App. at 531-32, 431 S.E.2d at 78-79.

bound by that agreement.  See Lockhart v. Baxter, 12 Va. App. 600, 605, 405 S.E.2d 434, 437-38 (1991) (finding no abuse of discretion in the trial court's award of attorney's fees to wife when evidence demonstrated that husband voluntarily signed a consent order and property settlement agreement providing for the payment of such fees).

Although the trial court erroneously relied on Fahey in denying wife's motion for an award reflecting appreciation in the investment accounts, we will not disturb the trial court's decision because it reached the correct result.[4]  See Dziarnowski v. Dziarnowski, 14 Va. App. 758, 762, 418 S.E.2d 724, 726 (1992) ("When a trial court reaches the correct result for the wrong reason, its judgment will be upheld on appeal.").

## II.

## INTEREST ON THE AWARD OF HUSBAND'S MEDICAL PRACTICE

In the final decree of divorce entered March 13, 1998, the trial court valued husband's medical practice at $70,000 and, pursuant to the parties' agreement to divide all marital property equally, ordered husband to pay wife $35,000.  Upon

---

[4] Fahey is inapposite.  In that case, we found that a modification of a qualified domestic relations order was precluded solely by the dictates of Code § 20-107.3(K)(4), the statutory provision which limits a court's authority to modify any order affecting any pension plan or retirement benefits. See Fahey, 24 Va. App. at 256-57, 481 S.E.2d at 497.  The sole issue addressed in Fahey is not presented here.

wife's motion for reconsideration of the final decree, the court set aside the final decree on April 3, 1998, "in order to give the parties and the [c]ourt time to resolve certain issues."

At a hearing on May 15, 1998, the court heard argument as to whether wife was entitled to receive the appreciation in value of her share of the accounts.  On July 8, 1998, the court entered the amended final decree of divorce, modifying its position as to the distribution of the parties' investment accounts but leaving unchanged the court's original award of $35,000 to wife as her share of husband's medical practice.

On appeal, wife does not dispute the court's valuation of the practice.  Rather, wife asks that she be awarded pre-decree and post-decree interest on her share of the medical practice from March 31, 1997, the date of valuation, until the date that husband actually paid her share of the award after the entrance of the amended final decree of divorce, some sixteen months later.

Code § 8.01-382 provides in relevant part as follows:

> In any action at law or suit in equity, the
> verdict of the jury, or if no jury the
> judgment or decree of the court, may provide
> for interest on any principal sum awarded,
> or any part thereof, and fix the period at
> which the interest shall commence.  The
> judgment or decree entered shall provide for
> such interest until such principal sum be
> paid.  If a judgment or decree be rendered
> which does not provide for interest, the
> judgment or decree awarded shall bear
> interest from its date of entry, at the rate

> as provided in § 6.1-330.54, and judgment or
> decree entered accordingly . . . .

As established by the Supreme Court of Virginia in Dairyland
Ins. Co. v. Douthat, Code § 8.01-382 "draws an important
distinction between prejudgment and postjudgment interest."  248
Va. 627, 631, 449 S.E.2d 799, 801 (1994).

The award of prejudgment interest is discretionary, a
matter committed to the trier of fact, "who 'may provide for'
such interest and fix the time of its commencement."  Id.  See
Marks v. Sanzo, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986)
(stating that "whether interest should have been awarded and, if
so, from what date interest should run, were matters within the
sound discretion of the chancellor").  "'[P]rejudgment interest
is normally designed to make the plaintiff whole and is part of
the actual damages sought to be recovered.'"  Dairyland, 248 Va.
at 631, 449 S.E.2d at 801 (quoting Monessen Southwestern Ry. v.
Morgan, 486 U.S. 330, 335 (1988)).

> The award of prejudgment interest is to
> compensate Plaintiff for the loss sustained
> by not receiving the amount to which he was
> entitled at the time he was entitled to
> receive it, and such award is considered
> necessary to place the [plaintiff] in the
> position he would have occupied if the party
> in default had fulfilled his obligated duty.

Marks, 231 Va. at 356, 345 S.E.2d at 267 (quoting
Employer-Teamsters, Etc. v. Weatherall Concrete, 468 F. Supp.
1167, 1171 (1979)).

In this case, we find no abuse of discretion in the trial court's failure to award interest to wife on her share of husband's medical practice before the entry of the court's amended final decree of divorce.  Husband had no obligation to pay wife her share of the practice until the court made its equitable distribution award and ordered him to make payment in accordance with it.  See Decker v. Decker, 22 Va. App. 486, 493, 471 S.E.2d 775, 778 (1996) (stating that a court may speak only through its written orders).  Although the court originally awarded wife $35,000 for the practice by its final decree of March 13, 1998, the court set aside that decree.  Thus, wife was not entitled to her share of husband's practice until the court reinstated wife's award by the amended final decree of divorce of July 8, 1998.  See Marks, 231 Va. at 356, 345 S.E.2d at 267 (stating that prejudgment interest is intended to compensate a plaintiff for losses "'sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it . . . .'" (quoting Employer-Teamsters, 468 F. Supp. at 1171)).

In contrast to the discretionary nature of prejudgment interest, wife is entitled to post-decree interest on her equitable distribution award as a matter of law.  See Dairyland, 248 Va. at 631, 449 S.E.2d at 801.  By statute, a judgment or decree that does not provide for interest "shall bear interest from its date of entry" at the rate established by Code § 6.1-330.54.  See Code § 8.01-382.  "[P]ostjudgment interest is

- 10 -

not an element of damages, but is a statutory award for the delay in the payment of money actually due."  Dairyland, 248 Va. at 632, 449 S.E.2d at 801.

However, we find that wife is not entitled to receive post-decree interest on her share of husband's practice.  The amended decree instructed husband to pay wife her share within thirty days of its entry.  Wife does not allege, nor does the record reflect, that husband failed to transfer her share within the time allotted by the court.  Thus, there has been no "delay in the payment of money actually due" that might justify the award of postjudgment interest in this case.  See id.

### III.

### CHILD SUPPORT

Husband argues that the trial court erred by deviating from the child support guidelines in consideration of the expenses being incurred for the payment of his children's tuition at a private school.  Husband does not dispute his ability to pay for his children's private education but contends the court's decision was erroneously based on wife's claim that the parties had agreed to provide private schooling for their children. Husband argues, in the alternative, that he never agreed to continue paying for the children's private education after divorce and that, even had the parties reached such an agreement during the marriage, it could not bind either of them once the

marriage dissolved.  We find husband's arguments unpersuasive as he mischaracterizes the basis for the court's award.

In his September 3, 1997 report, the Commissioner reported:

> [b]ased on the financial circumstances of the parties, $1,500 per month would be an appropriate amount of child support, however, so long as the children are in Norfolk Academy, a circumstance agreed upon by both parties, the amount of child support should be $2,000 per month.

The trial court agreed that husband should pay child support in excess of the guidelines set forth in Code § 20-108.2 and required him to pay $2,315.02 per month.  The court's decision to deviate from the guidelines amount was properly based on numerous considerations, of which the parties' agreement was only one.  The court incorporated the following remarks at a hearing on February 6, 1998 into the amended final decree of divorce:

> [I] find[] . . . that the parties had agreed the children should go [to Norfolk Academy], that they have been there from the beginning of their education.  It would be disruptive to change that procedure.  The standard of living which was created during the marriage allowed them to go to this particular private school and it was established that this would be the case during the marriage. Also, that's included up under the thirteen contributions, monetary, nonmonetary, of each party to the well-being of the family, and also other factors because, as I have mentioned previously, the children's routine would be disrupted and the reason the parties are divorcing is because of the father's adultery.

- 12 -

"The determination of child support is a matter of discretion for the trial court, 'and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 253, 498 S.E.2d 425, 432 (1998) (quoting Young v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986)).  Although the amount of child support called for by the guidelines set forth in Code § 20-108.2 is presumptively correct, this presumption may be rebutted by evidence pertaining to, inter alia, the ability of each party to provide child support, the best interests of the child, the standard of living enjoyed by the family during the marriage, and other factors "necessary to consider the equities for the parents and children." Code § 20-108.1(B).  See Niemiec v. Dep't of Soc. Servs., Div. of Child Support Enforcement, 27 Va. App. 446, 450-51, 499 S.E.2d 576, 579 (1998).  Moreover, in Solomond v. Ball, we stated that a parent may be required to pay for private educational expenses, even though such expenses exceed the guidelines, when there is a demonstrated need for the child to attend private school and the parent has the ability to pay.  See 22 Va. App. 385, 391, 470 S.E.2d 157, 160 (1996).  Among the factors that are relevant to determining whether there is a need for private education, the court may consider the child's "attendance at private school prior to the separation and divorce" and the family's tradition.  See id.

We find that the court considered the relevant factors in making its award of child support and that a deviation from the guidelines amount was warranted.  The evidence establishes the children's need to continue their private education at Norfolk Academy.  During the marriage, the parties sent their children to private school.  Both children attended Norfolk Academy before the parties' separation and continued to do so after the separation.  Based on the children's prior and continuing attendance at Norfolk Academy, and the disruption to the children's education that would necessarily accompany a transfer to public school, we find that the evidence demonstrates the children's need to continue their education at Norfolk Academy.  Moreover, given the success enjoyed by the children at Norfolk Academy, the evidence supports the conclusion that their continued attendance at the Academy is in their best interest and avoids the inequitable result of penalizing them as a consequence of their parents' separation and divorce.  Accordingly, we affirm the trial court's decision to deviate from the child support guidelines in making its child support award.

IV.

AWARD OF ATTORNEY'S FEES

Husband also contends the trial court erred in awarding attorney's fees and various costs to wife.  In his report, the

Commissioner addressed the issue of attorney's fees and costs as follows:

> [W]ife has submitted a statement for attorney's fees in the amount of $28,427.50 and costs of $4,426.58 . . . . Having observed the conduct of the parties and counsel and considering the evidence, including . . . wife's statement for attorney's fees, this Commissioner is of the opinion that much of the time spent prior to the hearing was generated by ill feeling between the parties resulting in extensive efforts and procedures that would otherwise not have been necessary. Evidence in the record does not explain or justify the amount of the award sought by . . . wife. The key to a proper award of counsel fees is reasonableness under all the circumstances. Cooke v. Cooke, 23 Va. App. 60, 65, 66 (1996). Accordingly, your Commissioner recommends that . . . wife be reimbursed in the amount of $15,000 for attorney's fees and $3,000 for costs. In addition, . . . wife has submitted a statement in the amount of $11,450 . . . in accounting fees. Of that amount, she should be reimbursed $4,200.

After overruling both parties' exceptions to the Commissioner's report, the trial court adopted the Commissioner's recommendations and awarded wife $15,000 for attorney's fees, $3,000 for costs, and $4,200 for accounting fees.

Husband argues wife "over-litigated" her case as a trial tactic, driving up her attorney's fees and costs unnecessarily. Without citing any examples from the record, husband alleges that wife caused an "absurd number" of court appearances, an "excessive amount" of discovery, and "endless fighting over the most infinitesimal details." With respect to the trial court's

- 15 -

award of costs, husband contends "[t]he record is devoid of any support for [the] bill from [wife's] accountant, and there is no reason why [he] should be responsible for paying . . . copying and other litigation expenses . . . ." We find no merit in husband's contentions and affirm the decision of the trial court.

The award of attorney's fees is committed to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. See Theismann v. Theismann, 22 Va. App. 557, 574, 471 S.E.2d 809, 817, aff'd upon reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); Poliquin v. Poliquin, 12 Va. App. 676, 681, 406 S.E.2d 401, 405 (1991). "Where the husband is in a clearly superior financial position and his infidelity precipitated dissolution of the marriage, the trial court may properly award attorney's fees to the wife." Theismann, 22 Va. App. at 574, 471 S.E.2d at 817. The key to a proper award of fees is "reasonableness under all of the circumstances revealed by the record." Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988).

Here, husband's infidelity precipitated the dissolution of the parties' marriage, and husband was in a clearly superior financial position. Husband's gross income as a physician was determined to be $14,500 per month. In comparison, wife did not work outside the home during much of the marriage and had only re-entered the work force as a teacher several months prior to

the parties' separation. Furthermore, the record fails to support husband's allegation that wife unnecessarily prolonged the litigation as a trial tactic to drive up costs, and wife presented detailed billing statements in support of her petition for attorney's fees.

In short, the trial judge had sufficient evidence to determine the reasonableness of the attorney's fees requested by wife and to make its award. Accordingly, we do not find any abuse of discretion in the trial court's decision on this issue. See Poliquin, 12 Va. App. at 681, 406 S.E.2d at 405.

We further find that the court properly awarded $7,200 in accountant fees and litigation costs and that its award was based on the evidence presented.

The decision of the trial court is affirmed.[5]

Affirmed.

---

[5] Wife's request for an award of attorney's fees and costs incurred on these appeals is denied.