COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


FREDERICK C. KLEIN

                                                MEMORANDUM OPINION* BY
v.        Record No. 0211-03-4                  JUDGE ROBER P. FRANK
                                                DECEMBER 2, 2003
KAREN N.E. KLEIN


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N. A. Kendrick, Judge

Robert G. Culin, Jr. (Culin, Sharp & Autry, on briefs), for appellant.

Thomas Peter Mann (Greenspun & Mann, on briefs), for appellee.


Frederick C. Klein (husband) appeals from an order dated December 23, 2002, finding that

he violated certain terms of a final decree of divorce and subsequent court orders.

I.  BACKGROUND

Husband filed for divorce from Karen Klein (wife) on September 8, 1993, based on living

apart for over a year.  The trial court entered a final decree of divorce on May 22, 1995.  A

document signed by both parties and their attorneys, titled "Klein – Terms of Settlement"

(Settlement), was incorporated into the final decree by reference.  The Settlement required

husband to refinance several properties, remove wife's name from the deeds, and pay wife for

her interest in the real estate in unspecified "installments" as husband refinanced the properties.

The clause noted that time was of the essence.  The Settlement also allowed husband to receive a

ten percent fee for managing the couple's partnerships, required him to provide certain

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

documents to wife, and required him to consult wife on all business matters, although he was not obligated to obtain her consent for his actions. The parties originally intended the Settlement to form the basis for a more detailed and formal property settlement agreement, which wife was to prepare, but no further agreement was reached. The parties never modified their partnerships to reflect the provisions of the Settlement.

On February 5, 1998, wife filed for a Rule to Show Cause, alleging husband had violated certain terms of the final decree and Settlement by failing to pay her approximately $230,000 for her ownership interest in the real estate. She also claimed that husband collected a ten percent management fee without amending the partnership agreements and that he refused to comply with the consultation and information requirements for the partnerships established in the Settlement. The trial court issued a rule to show cause, which was heard on April 20 and 21, 1999.

While awaiting the show cause hearing, wife filed a Motion to Compel Discovery, which was granted on February 9, 1999.[1] Wife then filed a Motion for Relief and Sanctions, based on husband's failure to abide by the order compelling discovery. The trial court entered an order granting this motion on April 19, 1999.[2] Imposing sanctions, this order prohibited husband from presenting expert witnesses and from using a defense of "impossibility with regard to the payment of the funds" during the hearing to be held on the original show cause motion. This order was not appealed.

On April 20, 1999, the trial court heard the rule to show cause. Husband objected to the testimony of wife's former attorney, who drafted the Settlement, arguing it constituted parol

---

[1] No transcript of the February 5, 1999 hearing on this issue is in the record.

[2] The Motion for Relief and Sanctions was heard April 7, 1999. No transcript of this hearing is in the record.

evidence. Wife argued parol evidence was necessary as the Settlement was vague, particularly its use of the term "refinance." The trial court allowed the testimony.

When wife asked for interest on the payments due under the Settlement, husband argued the Settlement did not include a provision for interest. The court found interest was warranted. Husband requested permission from the court to examine wife regarding her "obstructionist" behavior, which allegedly prevented him from refinancing the properties. The court did not allow the examination.

Wife argued husband should not collect the ten percent management fee because the partnership agreements had never been amended. Husband argued, if he could not collect the ten percent fee, then he should not be required to provide documents and make reports as required by the Settlement.

On May 7, 1999, the trial court entered an order finding husband in contempt on the rule to show cause, but continued the case to June 18, 1999, to give husband the opportunity to pay the money he owed wife under the Settlement and to purge the contempt finding. The court ordered that husband pay interest on this money, with an accrual date of May 22, 1995, the day the final decree of divorce was entered. The court also ordered that husband cease taking the management fee, that he consult with wife on the partnerships, and that he provide her with all relevant partnership documents.

Wife's attorney prepared the order incorporating the foregoing rulings. Notice of the presentation of this order to the trial court was sent to husband on May 3, 1999. However, a copy of the order was not attached to the notice. The order was presented to and entered by the court on May 7, 1999, without the presence or signature of husband's counsel. On May 21, 1999, husband filed a motion to vacate the May 7, 1999 order. The trial court heard the motion a week later and denied it. Husband then filed an appeal of the May 7, 1999 order with this Court.

4.      On June 29, 1999, husband filed a "Motion to Vacate Oral Ruling of June 18, 1999 and Release Complainant." The trial court apparently had sentenced husband from the bench on June 18, 1999, to 90 days in jail for contempt of the final decree of divorce. However, no written order or transcript from the June 18, 1999 hearing is in the record.

Husband's appeal to this Court of the May 7, 1999 order was dismissed as premature on November 4, 1999. Klein v. Klein, Rec. No. 1303-99-4 (unpublished). This Court found the order was not final nor an appropriate interlocutory order for appeal. In a footnote, this Court said, "We note, however, that the record before us does not contain a written order memorializing the June 18, 1999 oral ruling. . . . Lacking a written order memorializing the June 18, 1999 oral ruling, husband is effectively unable to appeal the ruling." Id. at 3 n.1.

5.      On September 28, 2001, wife filed a new Notice and Motion for Entry of a Rule to Show Cause, asking that the trial court find husband in contempt for violation of the "May 7, 1998"[3] order and all subsequent orders of the court. On January 24, 2002, the court heard this show cause. From the bench, the court ordered that husband turn over a box of documents, formerly in the possession of Ms. Mahoney (a.k.a. Ms. Byrne), as well as other documents related to the partnerships. The trial court also ordered that husband remove wife's name from a deed to Florida property and that he pay the previously ordered fees and costs related to wife's motion to compel discovery. The court found husband in contempt, but the finding was withheld and no sanctions were imposed at that time. No written order was entered to memorialize the trial court's pronouncements.

On September 25, 2002, wife filed a motion to impose sanctions for the contempt finding of January 24, 2002, requesting the motion be heard on October 4, 2002. Although the parties

---

[3] Later documents make clear the motion intended to refer to the May 7, 1999 order.

apparently were in the courthouse on that day, no transcript, written order, or agreement of the parties relevant to that day is in the record. While at the courthouse, the parties apparently negotiated a Memorandum of Understanding (Memorandum), which gave husband ninety days to pay wife $800,000 for her interest in the partnerships,[4] continued the contempt case to November 15, 2002, and allowed the "instant motion to be dismissed" if all the requirements in the Memorandum were fulfilled.[5] The Memorandum included a release clause that gave husband two weeks to determine whether he could raise the $800,000 to purchase wife's interest in the partnerships.

On November 4, 2002, wife again filed a notice and motion, asking that the trial court impose the January 24, 2002 "suspended finding of contempt" and enforce the Memorandum. A hearing on this motion was held on November 15, 2002.[6] No transcript of this hearing is in the record, and no written order was entered memorializing the trial court's findings or rulings. According to testimony at a later hearing, after a hearing on November 15, 2002, the trial court found husband in contempt and sentenced him to jail.

On December 19, 2002, husband filed a motion to reconsider the November 4, 2002 ruling "ordering him to remain incarcerated until he paid the sum of $800,000 to [wife] pursuant to the October 4, 2002 Memorandum of Understanding." The motion argued that no evidence was introduced at the November hearing, that the trial court lacked the authority to enforce the

---

[4] These partnerships are the same business entities mentioned in the Settlement. The Settlement did not require husband buy wife's interest in the partnerships. Under the Settlement, husband was only required to buy wife's interest in particular parcels of real estate. The partnerships remained intact.

[5] This document was not filed with the trial court on October 4, 2002, but instead appears in the record as an attachment to a later motion and as evidence presented at a later hearing.

[6] Although some documents indicate the hearing was on the 16th, a later court order says it was on the 15th.

Memorandum, and that the court lacked the authority to find him in contempt before the payment was due under the Memorandum.[7]

On December 20, 2002, the court conducted a hearing on husband's motion to reconsider. Husband's attorney argued the November hearing did not proceed on proffers, as the court believed it had. Wife's attorney disagreed, arguing husband did not object to the procedure at the time. The trial court noted, in response to wife's attorney, "And that was your understanding, but out of an abundance of caution, the ruling is going to stand." The court then said, "I made a ruling based on what I thought was proffered evidence. There is no official record of it. What I'm going to do, I'm not changing my ruling." When husband objected, the court said, "See, that's an appealable issue. What I want to give you is the complete record so that you can appeal it."

Although the trial court seemed to find the November 15, 2002 oral contempt order was not based on the presentation of evidence or proffers, nevertheless, it did not rescind the order jailing husband. Instead, the court required that husband remain incarcerated. The trial court set another hearing for the presentation of evidence on the contempt allegations for December 23, 2002.

At the December 23, 2002 hearing, husband testified he told wife he could not raise the $800,000 as required by the clause in the Memorandum. He acknowledged he had since raised the money by selling two tracts of property to the person who owned a business on one of the parcels.[8]

_____

[7] Under the Memorandum, husband had ninety days to pay wife. As the document was signed on October 4, 2002, husband had until January 2, 2003, to make the payment.

[8] The buyer testified he had a continuing business on one parcel, and the other parcel was across the street from his business. He explained he heard husband was in jail, which prompted him to make an offer to buy the properties.

Although husband was ordered to provide partnership documents to wife, wife claimed she had not received all the documents requested. She testified she received only four small boxes (described as "french fry" boxes) and one manila envelope. None of the documents she received related to particular transactions conducted by husband with partnership money or to notes receivable by one of the four partnerships. Husband claimed he had turned over all the partnership documents he had in his possession.

The trial court found husband was not a credible witness and held him in contempt for failing to pay wife under terms of the Memorandum. His attorney objected to the contempt finding, contending the money was not due until January 2, 2003. Husband admitted he had a $800,000 check in court that day in his attorney's possession.

The court then entered an order on December 23, 2002, finding husband in contempt, based on the evidence from the January 24, 2002 hearing and the November 15, 2002 hearing. The court found husband refused to disclose partnership records to wife, that the Memorandum was entered into as a means to resolve the contempt proceedings and was enforceable, and that husband failed to abide by the terms of the Memorandum. The court required husband to either produce the missing box of documents or abide by the terms of the Memorandum. Until he did one or the other, the court remanded him to jail.

6. Evidently, husband paid wife the money he owed her under the Memorandum at the conclusion of the December 23, 2002 hearing. Apparently, he also complied with the Settlement and the May 7, 1999 order at some point, including paying the interest as ordered by the trial court.[9]

---

[9] Both parties acknowledge in their briefs that all moneys have been paid.

## II. ARGUMENTS RELATED TO THE MAY 7, 1999
## AND THE JUNE 18, 1999 ORDERS

Husband argues the trial court erred when it accepted parol evidence to interpret the Settlement, when it interpreted the terms of Settlement, when it disallowed payment of the management fee, when it refused evidence to support his defense of obstructionist behavior by wife, and when it waived the notice requirements of Rule 1:13. We first address whether these issues are ripe for appeal.

All of these arguments relate to an interlocutory order entered on May 7, 1999, which held the adjudication of contempt in abeyance. This contempt finding, unlike the contempt finding of December 23, 2002, was based on husband's failure to abide by the Settlement provisions of the final divorce decree. Husband's first five issues all concern the earlier contempt finding. Specifically, husband objects to rulings on the admission of parol evidence allegedly used to interpret the Settlement. He objects to rulings that excluded evidence regarding wife's behavior, which he alleges interfered with his ability to comply with the Settlement's conditions. Husband also objects to the court's interpretation of the Settlement. He objects to the trial court's ruling in the May 7, 1999 order that disallowed the management fees. He objects to the entry of the May 7 interlocutory order without proper notice or endorsement by counsel. In contrast, the contempt finding of December 23, 2002, was based on different allegations and evidence, related to the parties' Memorandum and other court orders.

This Court previously found the May 7, 1999 contempt order was an unappealable interlocutory order. Klein, Rec. No. 1303-99-4. This Court noted that a final, written order lifting the abeyance and finding husband guilty of contempt was necessary before the case would be ripe for appellate review. Id. at 3 n.1. Husband argues the order of December 23, 2002 is such a final order.

Code § 17.1-405(3) grants this Court jurisdiction over "[a]ny *final* judgment, order, or decree of a circuit court involving . . . [d]ivorce."[10] (Emphasis added.) The December 2002 order is the final decree for the issues in the May 7, 1999 order.

Although it does not explicitly lift the abeyance, the December 2002 order states, "[a]ll other orders, including the first order adjudicating Mr. Klein's Contempt, remain in full force and effect." The trial court also found in the December 23, 2002 order that:

> The actions of [husband] as set forth in the Rule to Show Cause are contemptuous of the Final Decree of Divorce entered by this Court on May 22, 1995, the first Order Adjudicating Contempt of [husband] on May 7, 1999 and the Court's ruling on January 24, 2002 requiring [husband] to deliver to [wife's] counsel certain documents about which the court found [husband] testified in untruthful fashion.

The trial court then specifically adopted the findings it made based on the January 24, 2002 hearing.

Although none of the evidentiary rulings or the contempt finding of December 23, 2002, appear based on the order of May 7, 1999, we find the language of the December 2002 order was sufficient to lift the abeyance and finalize the May 1999 interlocutory order. The December 2002 order explicitly states the May 7, 1999 order be "in full force and effect," thus removing the abeyance. We conclude, therefore, that we have jurisdiction to consider the issues related to the May 7, 1999 order.

A. Introduction of Parol Evidence and Interest Payments

Husband argues the trial court erred in accepting parol evidence.[11] He contends, because this evidence was introduced, the court "wrote a new contract for the parties" that included a

---

[10] We also note that the time for filing a notice of an appeal does not begin to run until "after entry of final judgment or other appealable order or decree." Rule 5A:6(a).

[11] Husband never argued that the Settlement was unenforceable.

- 9 -

provision requiring husband pay interest on the Settlement amount from the date the divorce decree was entered.[12] We find the trial court did not err in ordering that the interest accrue from the date of entry of the divorce decree.

For the purposes of this appeal, we need not address whether the trial court erred in accepting parol evidence. Whether or not the parol evidence was inappropriately admitted, the trial court did not err in awarding interest beginning May 22, 1995. Although the Settlement did not include a provision for interest, the trial court could award prejudgment interest under Virginia law. Wife does not claim the Settlement included a provision for interest, but instead contends interest is allowed under Code §§ 8.01-382 and 20-107.3(D). We agree with wife.

Code § 20-107.3(D) provides, in part:

> In addition . . . the court has the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party. . . . An award entered pursuant to this subsection shall constitute a judgment within the meaning of § 8.01-426 and shall not be docketed by the clerk unless the decree so directs. The provisions of § 8.01-382, relating to interest on judgments, shall apply unless the court orders otherwise.

Code § 8.01-382 allows the accrual of interest on a judgment or decree:

> In any action at law or suit in equity, . . . the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The judgment or decree entered shall provide for such interest until such principal sum be paid.

In Ragsdale v. Ragsdale, 30 Va. App. 283, 292-93, 516 S.E.2d 698, 702-03 (1999), this Court addressed whether a spouse was entitled to interest under Code § 8.01-382 when the

---

[12] Wife argues husband did not "contemporaneously object" to Maddox's testimony, thereby failing to preserve this issue for appeal under Rule 5A:18. However, husband did object to Maddox taking the stand, which was sufficient here to preserve the issue for appeal.

decree of divorce did not provide for interest payments. The Court explained the standard of review:

> As established by the Supreme Court of Virginia in Dairyland Ins. Co. v. Douthat, Code § 8.01-382 "draws an important distinction between prejudgment and postjudgment interest." 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994).
>
> The award of prejudgment interest is discretionary, a matter committed to the trier of fact, "who 'may provide for' such interest and fix the time of its commencement." Id. See Marks v. Sanzo, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (stating that "whether interest should have been awarded and, if so, from what date interest should run, were matters within the sound discretion of the chancellor"). . . .
>
> ["]The award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty.["] Marks, 231 Va. at 356, 345 S.E.2d at 267 (quoting Employer-Teamsters, Etc. v. Weatherall Concrete, 468 F. Supp. 1167, 1171 (1979)).

Id. at 292, 516 S.E.2d at 702. See also Marks, 231 Va. at 356, 345 S.E.2d at 267 ("[W]hether [prejudgment] interest should have been awarded and, if so, from what date interest should run, [are] matters within the sound discretion" of the trial court.). In Ragsdale, this Court found:

> no abuse of discretion in the trial court's failure to award interest to wife on her share of husband's medical practice before the entry of the court's amended final decree of divorce. Husband had no obligation to pay wife her share of the [medical] practice until the court made its equitable distribution award and ordered him to make payment in accordance with it. See Decker v. Decker, 22 Va. App. 486, 493, 471 S.E.2d 775, 778 (1996) (stating that a court may speak only through its written orders).

Ragsdale, 30 Va. App. at 292, 516 S.E.2d at 702. In an earlier case, this Court found that a trial court could award prejudgment interest even where the decree did not include a specific date by which payments were due. Jones v. Jones, 18 Va. App. 52, 441 S.E.2d 360 (1994) (finding a trial court did not abuse its discretion by awarding prejudgment interest on a divorce decree that

- 11 -

did not specify the date on which the division of assets would occur). Even without a "time is of the essence" provision, "[t]he rule in Virginia has been long established that 'when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time.'" Id. at 55, 441 S.E.2d at 361 (quoting Grossmann v. Saunders, 237 Va. 113, 120-21, 376 S.E.2d 66, 70 (1989)).

Here, the trial court did not abuse its discretion in finding wife was entitled to interest from entry of the final decree of divorce. The Settlement requires husband make the payments to wife in installments as the properties are refinanced, but does not establish a date certain on which the funds should be paid. However, the Settlement also indicates "time is of the essence," including this phrase twice in paragraphs discussing the entire amount due wife. Manifestly, husband could not indefinitely delay the refinancing of the properties and the payment to wife of her settlement.

The trial court determined May 22, 1995, the date of the final decree of divorce and approximately seven months after the parties signed the Settlement, was the appropriate due date for the final payment owed wife under the Settlement. We find the evidence supports this ruling. The language of the Settlement explicitly indicates wife needed the money promptly. Seven months to refinance the properties and make the payments to wife is a reasonable interpretation of the "time is of the essence" provision. The date of entry of the final decree was, therefore, a reasonable deadline for the conclusion of the payments. Wife is entitled to compensation in the form of interest for the loss of use of those funds. See Ragsdale, 30 Va. App. at 292, 516 S.E.2d at 702. We cannot find the trial court abused its discretion in reaching this determination.

## B.  The Management Fee

Husband argues the trial court erred by prohibiting him from taking a ten percent management fee, which he argues was allowed under the terms of the Settlement.  Wife conceded during oral argument that husband was entitled to a fee, but not in the amounts that he previously claimed.  Because the parties agree that husband is entitled to the management fee, we reverse the trial court's ruling that denied husband receipt of the ten percent fee.  However, the parties disagree about which revenues provide the basis on which the ten percent fee should be calculated.  Therefore, we remand the case for the trial court to resolve this evidentiary dispute.

## C.  Prohibition of a Defense Strategy

The trial court refused to allow husband's examination of wife regarding her "refusal to cooperate in the refinancing and/or sale of the properties."  Husband argues this holding was in error.  We disagree.

As part of the sanctions for husband's failure to comply with discovery orders, he was "estopped from arguing the issue of impossibility with regard to the payment of these funds and it is established that [husband] has, and has had, at his disposal, at all times relevant hereto, sufficient funds to pay [wife] in satisfaction of his responsibilities" under the Settlement.  Husband does not argue this order was in error.  At the hearing on April 20, 1999, however, husband argued the sanction did not exclude a defense of impossibility based on wife's failure to cooperate with the refinancing of the properties.  The trial court refused to allow husband to present testimony from wife on this defense.

At the conclusion of the evidence, the trial court, the attorneys, and the parties discussed the reasons for husband's failure to refinance the properties.  Wife and her attorney agreed that she had not cooperated with husband because he had not prepared the appropriate deeds for

escrow which would protect her interests. Husband's attorney agreed the deeds were not prepared, but claimed he was not responsible for preparing those deeds.

The trial court found husband in contempt for not refinancing and making the required payments and gave him sixty days to purge the contempt. Husband agreed that sixty days was adequate time to prepare the deeds and list the properties for sale. On June 18, 1999, the trial court held a hearing and apparently found husband had not purged the contempt finding. The record does not include a transcript of this hearing or a written order memorializing the proceedings of June 18, 1999.

Although the trial court excluded the testimony on wife's lack of cooperation with the refinancing, it did consider husband's arguments and representations, as well as wife's admissions, made at the conclusion of the hearing. During that argument, husband conceded that wife's failure to cooperate was based on his failure to draft the appropriate documents. Therefore, even if the trial court erred, it considered the evidence husband intended to present. Any error in excluding the evidence was harmless and does not justify overturning the court's finding. See Williams v. Commonwealth, 4 Va. App. 53, 78-79, 354 S.E.2d 79, 93-94 (1987) (explaining that harmless errors, errors that do not effect the outcome of a case, do not provide a basis for overturning a trial court's finding).

### D.  Rule 1:13

Husband argues he did not receive "reasonable notice" of the presentation of a proposed order to the trial court on May 7, 1999, as required by Rule 1:13. Husband's counsel did not endorse or waive endorsement of the order nor was he present when the order was entered. Husband argues the trial court erred in denying his motion to vacate this order. We disagree.

Rule 1:13 requires that "[d]rafts of orders and decrees shall be endorsed by counsel of record, or reasonable notice of the time and place of presenting such drafts together with copies

- 14 -

thereof shall be served . . . to all counsel of record who have not endorsed them." The rule does not specifically define "reasonable notice."

Husband acknowledges he received notice of the expected presentation four days prior to the presentation date. While he contends a copy of the proposed order was not attached to the notice, in his "Motion to Quash Notice," which he filed with the court the day before the presentation, he admits wife sent him a copy of the proposed order. He also states "changes [in the proposed order] were requested by counsel for [husband]."

Husband received notice of the time and place for the presentation of the draft order and received a copy of the order. He does not argue that he was confused or misled about the order or its relation to the notice. He does not contend he had insufficient time to review the order. He admits he had time to request a continuance. Even if the rule were violated, we do not perceive any prejudice resulted from the failure to attach a copy of the proposed order to the notice. Because any error was harmless, the trial court did not abuse its discretion in dispensing with compliance of this rule. Rule 1:13. We will not vacate the order entered by the court.

### III. ISSUES REGARDING THE DECEMBER 23, 2002 ORDER

Wife contends all of these issues are waived because husband voluntarily paid the $800,000. In support of her argument, she cites Carlucci v. Duck's Real Estate, Inc., 220 Va. 164, 166, 257 S.E.2d 763, 765 (1979), which states, "The general rule is that the payment of a judgment deprives the payor [sic] of the right of appeal only if payment was made voluntarily." We do not agree with wife that husband's payment of the $800,000 was voluntary.

At the time husband paid the $800,000, he faced immediate imprisonment if he did not either produce the missing box of documents or make the payment. This type of choice does not suggest voluntary action. We find this circumstance constituted proceedings "to execute on the judgment," not a voluntary payment. Citizens Bank & Trust Co. v. Crewe Factory Sales Corp.,

- 15 -

254 Va. 355, 355, 492 S.E.2d 826, 826 (1997). Husband was not deprived of his right to appeal by making the payment.

Husband argues the trial court erred in finding the Memorandum enforceable, in refusing to release him from jail on December 20, 2002, and in finding him in contempt for failure to pay the $800,000 before it was due and for failing to turn over a box of documents. We agree, in part, with husband.

## A. Enforceability of the Memorandum

Husband contends one of the conditions precedent to the enforcement of the Memorandum was not met, i.e., he never told wife that he could raise the $800,000. Wife argues the condition was met because, although husband informed wife he could not raise the funds, he told her at the same time that he had access to substantial equity, attempted to renegotiate the deal, and eventually did raise the $800,000 "in a relatively brief period of time." In effect, wife argues husband's actions demonstrate bad faith dealings under the Memorandum.

The Memorandum provided that husband would pay wife $800,000 in ninety days, plus sign over his interest in a particular piece of real estate. In return, wife would sign over all her interest in the couples' various partnerships[13] and agree to the dismissal of the contempt proceedings. However, the Memorandum allowed husband two weeks "to determine if he [could] raise the cash." All parties agree that husband informed wife that he could not raise the funds. However, wife contends this representation was knowingly untruthful.

While no explicit provision in the Memorandum provides for the use of good faith in this agreement, our case law does impose an implied duty of good faith on contracts between private

---

[13] The Memorandum does not explicitly state that wife will sign over her interest. However, both parties and the trial court consistently expressed the view that the Memorandum required wife to relinquish her interest in the partnerships.

- 16 -

parties.  The Supreme Court of Virginia in 1916 noted the "correct statement of the rule in this

State:"

> "When the defendant proved a complete sale, the law implied, in
> the absence of further proof, good faith and honesty in the contract.
> In every transaction lawful in itself, the law supports a
> presumption of honesty and good faith. He who asserts the
> existence of fraud or bad faith asserts the existence of that which is
> out of the common course of things, and the *onus* is cast upon him
> to make proof of his averments, and, as I understand it, the burden
> of proof on such an issue never changes."

Aronhime v. Levinson, 119 Va. 394, 398-99, 89 S.E. 893, 894 (1916) (quoting Farrington v.

Harrison, 44 N.J. Eq. 232, 236, 15 A. 8, 9 (1888)).  See also A & E Supply Co. v. Nationwide

Mut. Fire Ins. Co., 798 F.2d 669, 676 (4th Cir. 1986) ("All contracting parties owe to each other

a duty of good faith in the performance of the agreement.  Restatement (Second) of Contracts

§ 205 (1981).").  Given this implied requirement of good faith, husband must have made his

claim that he could not raise the $800,000 in good faith in order to claim the Memorandum is not

enforceable.

The trial court heard husband's testimony and found him "anything but a credible

witness."  The court also noted, "I believe [the Memorandum]'s enforceable and I believe it was

done in an attempt by [husband] to purge himself of the contempt, and he's had second thoughts

about it."  The trial court, as fact finder, had the responsibility to determine the credibility of the

witnesses, which this Court will not second-guess.  Marable v. Commonwealth, 27 Va. App. 505,

509-10, 500 S.E.2d 233, 235 (1998).  Clearly, the trial court found husband made his claim of

inability to raise the funds in bad faith.  If the evidence supports this finding, we will not reverse

it on appeal.  Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000).

The evidence, viewed in the light most favorable to wife, see id., supports the trial court's

conclusion that husband acted in bad faith.  First, while contending he could not raise the $800,000

for the Memorandum deal, he presented a counter-offer to buy his wife's interest for $900,000.

This counter-offer suggests he believed he could raise the necessary funds. Second, by the time of the hearing, husband had raised the $800,000 by selling two parcels of land. The purchaser of the parcels was known to husband when he claimed he could not raise the funds required by the Memorandum, as he owned a business that rented one of the parcels.[14] Third, the trial court did not believe husband's testimony that he could not raise the funds. Husband provided no additional evidence to support his claim. Overall, the evidence was sufficient to prove husband acted in bad faith when he attempted to use the release clause in the Memorandum. The Memorandum, therefore, is enforceable.

## B. Continued Jailing of Husband

Husband argues the trial court imprisoned him for contempt on November 15, 2002, without hearing any evidence and should have released him from jail when it realized its error. Wife argues husband made no objection on November 15th; therefore, the issue was not preserved under Rule 5A:18. Wife also argues this issue cannot be reviewed because the record does not include a transcript or a written statement of the November 15, 2002 hearing.

Generally, an objection must be made at the time of the ruling in order to provide the court with an opportunity to remedy the error. Rule 5A:18; Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997). In this case, the objection, although made after the initial ruling, was considered by the trial court as a motion to reconsider and could have been corrected at that time. Therefore, the objection was made in a timely matter, and we will consider husband's argument. See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (*en banc*) ("[T]he trial court was adequately advised of the defendant's position, . . . it did consider

___

[14] Although a logical person to approach about buying the properties, the purchaser apparently did not know the land might be for sale until he heard husband was in jail for contempt.

the issue raised, and . . . it had the opportunity to take corrective action. Therefore, the purpose underlying the contemporaneous objection rule was fulfilled . . . .").

If the trial court did not hear evidence and did not accept any proffers during the November 15th hearing, then this Court cannot affirm the court's jailing of husband. See Snow, 33 Va. App. at 774, 537 S.E.2d at 10 (noting that the evidence in the record must support a trial court's actions). We do not know, however, if the trial court heard evidence or accepted proffers because a transcript of that hearing is not in this record.

Husband has the responsibility to present this Court with an adequate record on which to make its rulings. Woodward v. Commonwealth, 16 Va. App. 672, 677, 432 S.E.2d 510, 513 (1993). This record includes only a discussion on December 20, 2002, in which the parties disagreed about the nature of the November 15th hearing. While husband argued no proffers were made, wife argued proffers were made and accepted by the trial court. After this discussion, the trial court "out of an abundance of caution" set a hearing for December 23, 2002, to determine again whether husband was in contempt of court.

This record does not include a transcript or a written statement for the November 15, 2002 hearing, as required under Rule 5A:8. Because we cannot examine the basis for the November 15, 2002 incarceration of husband, we cannot determine whether the trial court erred by committing husband to jail and keeping him there until December 23, 2002. See Patterson v. City of Richmond, 39 Va. App. 706, 717, 576 S.E.2d 759, 765 (2003) ("Because the appendix filed in this case does not contain parts of the record that are essential to the resolution of the issue before us, we will not decide the issue.").

- 19 -

## C. Finding of Contempt on December 23, 2002

Husband argues the trial court erred in finding him in contempt because the Memorandum did not require that he make a payment to wife until January 2, 2003,[15] approximately a week after the contempt hearing. Husband also argues the court inappropriately found him in contempt for failure to turn over a particular box of documents to wife. Wife argues, since husband did not sign the final order, his objection was not preserved under Rule 5A:18. Wife's argument, however, misstates the law, as appellate issues may be preserved in a number of ways. See Lee v. Lee, 12 Va. App. 512, 515-16, 404 S.E.2d 736, 738 (1991) (*en banc*).

Husband objected during his closing argument to the trial court finding him in contempt prior to January 2, 2003. This objection was made at the time of the ruling, and the trial court made its decision after hearing this objection. See Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 166-67 (1991) (permitting an appeal of an issue where the party made the argument to the trial court, but signed the final order "Seen"); Campbell, 12 Va. App. at 480, 405 S.E.2d at 2. The issue is preserved for appeal.

Assuming the trial court erred by finding husband in contempt before the Memorandum required the payment, we cannot hold the final order of contempt was in error. As husband acknowledged at the December 23, 2002 hearing and in his brief on appeal, the trial court found husband in contempt for his failure to pay wife $800,000 *and* for his failure to turn over a box of documents to wife. As long as the evidence supports one basis for the contempt finding, this Court will not reverse the trial court's decision. Cf. Hudock v. Virginia State Bar, 233 Va. 390, 392, 355 S.E.2d 601, 602 (1987) (to affirm a decision of the State Bar on appeal, the Court need find only

---

[15] Under the Memorandum, husband had ninety days to pay the $800,000. The Memorandum was signed on October 4, 2002. Therefore, the last day to pay wife was January 2, 2003. Wife does not argue the payment was due prior to that date.

one of the alternative bases for the decision was established); Debroux v. Commonwealth, 32 Va. App. 364, 371-72, 528 S.E.2d 151, 155, aff'd, 34 Va. App. 72, 537 S.E.2d 630 (2000) (*en banc*) (if the trial court addressed an issue, did not reject the alternative ground for its decision, and the factual record supports that decision, then the appellate court can affirm).  We find the trial court did not err in holding husband in contempt for failure to turn over particular documents. The contempt finding is affirmed.

Husband argues he turned over enough documents to allow wife to protect her interests.  He also argues he did not have the box of documents or any other documents that wife requested. However, the trial court did not believe husband's testimony that he did not have the box of documents given to him by Ms. Mahoney.  The court specifically ordered husband to give that box to wife, as well as other documents related to loans made to private individuals using partnership money.  Wife testified that she did not receive the box or the documents she requested.  She also testified that various documents, necessary to evaluate the accounts receivable, were not included in the papers provided by husband.  Although husband claimed he did not have any of these documents or the box, the trial court did not believe him.

The trial court evaluates the credibility of the witnesses.  Marable, 27 Va. App. at 509-10, 500 S.E.2d at 235.  Here, the court chose to believe wife and disbelieve husband.  Such a decision was within the trial court's discretion.  Therefore, the evidence supports the finding of contempt.

Although errors may very well have occurred during the course of these proceedings, the record as presented in this case is woefully inadequate.  Thus, we find no reversible error regarding the December 23, 2002 finding of contempt.

## IV.  CONCLUSION

We find the trial court erred in prohibiting the payment of a management fee to husband, and we remand for further proceedings on that issue.  On all other issues, we affirm the trial court's rulings.

<u>Affirmed in part; reversed</u>
<u>and remanded in part;</u>