COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Frank and Humphreys
Argued at Richmond, Virginia


EMMANUEL SNOW
                                           OPINION BY
v.   Record No. 0168-00-2        JUDGE ROBERT J. HUMPHREYS
                                        NOVEMBER 21, 2000
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                      James A. Luke, Judge

           Brad P. Butterworth (Butterworth & Waymack
           on brief), for appellant.

           Stephen R. McCullough, Assistant Attorney
           General (Mark L. Earley, Attorney General,
           on brief), for appellee.


     Emmanuel Snow appeals his convictions, in a bench trial, for

child cruelty and receiving stolen goods.  The appellant contends

that the trial court erred in finding:  1) that driving a motor

vehicle at a high rate of speed constituted a willful act by a

person responsible for the care of a child so gross, wanton and

culpable as to show a reckless disregard for human life, 2) that

the evidence was sufficient to prove he was responsible for the

care of the juveniles involved, and 3) that he had knowledge that

the vehicle was stolen.

## I.  Background

On August 3, 1999, Sergeant Daniel Moegling of the Prince George County Police Department, observed a burgundy Dodge Spirit traveling fast on Interstate 295.  Using a stationary radar, Officer Moegling estimated the rate of speed at 105 miles per hour.  Accordingly, Officer Moegling stopped the vehicle and observed a "tremendous amount of movement [in] the interior of the vehicle."  Because of the movement in the vehicle and "not knowing what [he] had," he did not approach the vehicle but, rather, used his patrol car speaker system to order the driver to get out of the vehicle and present identification.  The driver got out of the vehicle, approached Officer Moegling, and presented him with a Maryland driver's license and a repair receipt for the vehicle registration.  The driver's license listed the name of the driver as "Emmanuel Snow."  However, the driver was not Emmanuel Snow, but was in fact Dion Snow, Emmanuel Snow's brother.

Officer Moegling arrested Dion for reckless driving, placed him in handcuffs and began to put him into the rear seat of his patrol car.  At that point, appellant, who was a passenger in the right front seat, got out of the Dodge Spirit and began "groping" on the floorboard of the car.  Officer Moegling drew his weapon and ordered appellant back into the car.  Appellant complied after some hesitation.

Officer Moegling then turned his attention back to Dion.  After a brief struggle, he was able to get Dion into the patrol

car.  Just as he accomplished this, he looked up and saw appellant in the Dodge's front seat "go across the console and get into the driver's seat."  Appellant then sped away with the car and its occupants.

Officer Castle, who was patrolling an area of highway about two and one-half miles north of the scene, received a radio dispatch about the speeding car.  He soon observed the car pass him at a speed of 112 miles per hour.  Officer Castle followed the vehicle, turning on his emergency lights.  However, the driver did not stop but maintained his speed, weaving in and out of the slower traffic.  Officer Castle then observed the Dodge spraying coolant and oil and concluded that the car's engine had blown.  Despite this, the driver still did not stop, but only slowed to a speed of about forty-five to fifty miles per hour.[1]  At this time a state police officer and a Henrico County police officer joined in the chase and were able to assist Officer Castle in bringing the Dodge Spirit to a stop.

---

[1] In arguing on brief that the trial court erred in finding appellant's action of driving the car at a high rate of speed to be "willful," counsel for appellant stated "Trooper Maxwell[, one of the officers who joined Officer Castle in the chase,] testified the defendant's vehicle was only going forty-five to fifty-five mph.  'And it wasn't at a very fast pace . . . .'" This statement misrepresented the facts.  Trooper Maxwell, in making this statement, was testifying to the rate of speed that appellant was driving after the engine on the car had blown.  We note with disfavor that counsel omitted this important distinction from his brief.

When Officer Castle approached the driver's side window, he observed that the ignition lock appeared to have been tampered with. The ignition switch was "popped," and the "chrome fixture that goes around the edge [of the ignition switch] was on the floorboard." Officer Castle then observed that four other individuals were in the car in addition to appellant.

After a brief investigation, Officer Castle determined that appellant, age thirty-two, was the driver of the car. The other passengers were Demonte Snow, age eighteen, David Snow, age seventeen, Brendan Snow, age ten, and Diontrae Snow, age eight. Appellant and Demonte were sitting in the front seat. David, Brendan, and Diontrae were sitting in the rear seat. Appellant denied being the father or legal custodian of any of the children in the car.

Appellant was arrested and transported to the police station. The next day, after processing the vehicle, Officer Moegling determined that the car had been stolen a few days earlier from a residence in Baltimore, Maryland. Appellant was subsequently indicted for three counts of child abuse or neglect in violation of Code § 18.2-371.1, as well as one count of receiving stolen property in violation of Code § 18.2-108.

At trial, the evidence established that appellant was the uncle of Demonte, David and Diontrae and that Demonte, David and appellant had driven the stolen car to South Carolina to visit

relatives.  They then picked up Dion, Diontrae and Brendan and were returning to Baltimore in the car when they were stopped.

At the scene, appellant stated that he thought Demonte may have stolen the vehicle.  However, at trial appellant testified that he had no knowledge that the vehicle was stolen and denied making a contrary statement to the police.  Appellant also testified that he had been asleep in the back of the vehicle when it was initially pulled over.  After Dion had been taken to the patrol car, appellant claimed that Demonte had awakened him and told him to drive.  Appellant claims he complied, but never noticed any evidence of tampering with the ignition switch.  Appellant also reiterated that he was not the father of the children in the vehicle and testified that Dion was the custodian of the children at the time they were stopped.

## II.  Analysis

### A.  Child Abuse or Neglect

Code § 18.2-371.1 provides the following in relevant part:

> B.  Any parent, guardian, or other person responsible for the care of a child under the age of eighteen whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

(Emphasis added).

Appellant first argues that the trial court erred in convicting him of violating this statute because he was not the guardian for the juveniles in the car, nor was he responsible

- 5 -

for their care at the time he was stopped.  We disagree.  In

*Krampen v. Commonwealth*, 29 Va. App. 163, 510 S.E.2d 276 (1999),

we addressed a similar statute, Code § 18.2-370.1.  That statute

punishes persons who take indecent liberties with a child, under

the age of eighteen, over which they have a "custodial or

supervisory relationship."  There, we held that:

> Code § 18.2-370.1 is clear and unambiguous
> in requiring proof of a "custodial" or
> "supervisory" relationship over the
> victim. . . .
>
> "Where a statute is unambiguous, the plain
> meaning is to be accepted without resort to
> the rules of statutory interpretation."
> Last v. Virginia State Bd. Of Med., 14 Va.
> App. 906, 910, 421 S.E.2d 201, 205
> (1992). . . . Accordingly, we must "'take
> the words as written'" in Code § 18.2-370.1
> and give them their plain meaning.  Adkins
> v. Commonwealth, 27 Va. App. 166, 169, 497
> S.E.2d 896, 897 (1998) (quoting Birdsong
> Peanut Co. v. Cowling, 8 Va. App. 274, 277,
> 381 S.E.2d 24, 26 (1989)).
>
> [T]he Supreme Court has rejected limiting
> the definition of "custody" to legal
> custody.  See Lovisi v. Commonwealth, 212
> Va. 848, 850, 188 S.E.2d 206, 208
> (construing Code § 40.1-103, formerly Code
> § 40-112), cert. denied, 407 U.S. 922
> (1972).
>
> "[Moreover,] [i]n its language [Code
> § 18.2-370.1] is unambiguous, justifying no
> limitation of the meaning of 'custody' to
> legal custody.  [In fact,] [t]o give it such
> a restrictive definition would eliminate,
> among others, teachers, athletic instructors
> and baby-sitters, all of whom might have
> temporary custody of children, from the
> purview of the statute."  Id. (emphasis
> added).

> Accordingly, we hold that the "custodial or supervisory relationship" required under Code § 18.2-370.1 is not limited to those situations where legal custody exists. The statute specifically provides that such a relationship "include[s] but [is] not limited to the parent, step-parent, grandparent, [or] step-grandparent." Code § 18.2-370.1 (emphasis added). The term also includes those individuals eighteen years or older who have a temporary, custodial relationship with a child, such as, "teachers, athletic instructors and baby-sitters." Lovisi, 212 Va. at 850, 188 S.E.2d at 208. The child in each instance has been entrusted to the care and control of the supervising adult.

Krampen, 29 Va. App. at 167-68, 510 S.E.2d at 278.

In Krampen, the evidence established that, with the permission of the victim's mother, Krampen willingly drove the victim home from church. We found that "[a]s the only adult present during [those] trips, [Krampen] had the responsibility for and control of the victim's safety and well-being while she was in his care. His contact with the victim was in the nature of a baby-sitter, i.e. one entrusted with the care of the child for a limited period of time." Id. at 168, 510 S.E.2d at 278-79.

As stated above, Krampen concerned Code § 18.2-370.1, which requires proof of a "custodial or supervisory" relationship. Code § 18.2-371.1 does not go that far. Instead, it requires proof only that a person is "responsible for the care of a child."

We have not previously considered whether circumstances such as those presented here may constitute the unilateral assumption of responsibility for the care of a child as required under the less stringent wording of Code § 18.2-371.1. However, as a logical extension of our holding in Krampen, we find that one may become a person "responsible for the care of a child" by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order.

Here, appellant was an uncle of Diontrae and David Snow and traveling with Diontrae's custodial father, his brother, from South Carolina to Maryland. He knew that the father was detained in police custody when he voluntarily took control of the vehicle and drove away knowing that the juveniles were in the vehicle. We hold that on these facts, appellant was a "person responsible for the care" of the juvenile occupants of the motor vehicle.

Appellant next argues the trial court erred when it found that the evidence presented concerning the manner in which he drove the car was sufficient to show "a willful act or omission in the care of the children." Again, we disagree.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

- 8 -

*Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." *Commonwealth v. Presley*, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

Furthermore, "[t]he credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted).

The statute at issue requires proof that appellant's "willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1.

> "Willful" generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. The term denotes "'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'" The terms "bad purpose" or "without justifiable excuse," while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality.

- 9 -

Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (citations omitted).

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from facts that are within the province of the trier of fact."  Id. at 555, 513 S.E.2d at 456.  Based upon the facts before us, we cannot hold that the trial court erred in finding that appellant acted willfully in driving in the manner in which he did.  This conclusion is particularly compelling in light of the fact that during most of the trip, appellant was being followed by a police cruiser with its emergency lights on, yet he did not pull over until the engine of the car was "blown" and two additional police cruisers were forced to join the chase.  Furthermore, we find it reasonable for the fact finder to have rejected the conclusion that appellant would have had any reason to believe that driving at a speed of over 100 miles per hour in an attempt to evade police was not dangerous or unlawful activity.  Accordingly, we find that under the circumstances of this case, the trial court did not err in finding appellant's actions to have been "willful" and "so gross, wanton and culpable as to show a reckless disregard for human life."

B.  Receiving Stolen Property

"To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property 'was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of

- 10 -

the theft, and (4) a dishonest intent.'  Guilty knowledge 'is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.'"  Shaver v. Commonwealth, 30 Va. App. 789, 800-01, 520 S.E.2d 393, 399 (1999).  "Guilty knowledge . . . [a]bsent proof of an admission against interest, . . . necessarily must be shown by circumstantial evidence."  Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983).

Officer Moegling's and Officer Castle's testimony describing appellant's frantic efforts to evade the police, as well as Officer Castle's testimony concerning the "popped" ignition and appellant's statement that he believed Demonte had stolen the vehicle, if believed by the fact finder in this case, were sufficient to prove receipt of the stolen vehicle with the requisite knowledge required by Code § 18.2-108.

Affirmed.

- 11 -