COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued by teleconference


COURTNEY LEE SIMON
                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0294-03-3                JUDGE ROBERT P. FRANK
                                                 DECEMBER 23, 2003
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                          Charles N. Dorsey, Judge

             Scott R. Geddes for appellant.

             Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
             Attorney General, on brief), for appellee.


        Courtney Lee Simon (appellant) was convicted in a bench trial of first-degree murder, in

violation of Code § 18.2-32, and use of a firearm in the commission of murder, in violation of Code

§ 18.2-53.1.  On appeal, he contends the evidence was insufficient to prove first-degree murder,

arguing the Commonwealth did not prove he intended to kill the victim.  Finding the evidence was

sufficient to prove appellant intended to kill the victim, we affirm the convictions.

                                    BACKGROUND

        Maurice Grogan, Sheneka Pannell, and Robert Dudley were meeting at the Foodway Market

in Roanoke.  Dudley, who arrived first, began talking to appellant, who was sitting in his car with

Melinda Short.  Grogan arrived and approached the passenger door of the vehicle, pulled on the

"latch," and then walked over to the driver's side where appellant was sitting.  Appellant and

Grogan began exchanging words.  Pannell characterized Grogan's demeanor as "playing around"

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and laughing "at times." Grogan asked appellant what he was doing with "Little Al's" girl, referring to Short. Appellant became angry and responded, "I don't give a f--- about Little Al! I don't care about him. I can have any girl I want." Dudley told Grogan to "stop playing."[1]

Pannell turned to enter the store. She heard appellant tell Grogan, in a "kind of mad" tone, "I'll be back. I'll be back." Appellant then sped off in his vehicle. Pannell, Grogan, and Dudley entered the store.

Two city employees, Warren Robinson and Garrett Lancaster, saw appellant and Short in the car in front of appellant's home. Lancaster observed the car pull over and saw appellant get out. Robinson and Lancaster continued driving to the Foodway, where they stopped for a break. Soon after they parked, they observed appellant and Short drive into the store's parking lot. Appellant parked the vehicle so that it pointed toward the road instead of putting it in a regular parking spot.

Appellant got out of the car and entered the store. He said to Grogan, "Goof, let me holler at you." Appellant and Grogan went outside and stood by the dumpsters. When Pannell exited the store a minute or two later, she observed Grogan's voice was still playful, but appellant had become "angry, and he just flipped out." He was "in a rage," while Grogan was "just standing there." The two men where standing within a foot of each other.

Pannell observed appellant "pull the gun out" and pointed it at Grogan's head. Grogan raised his hands in a defensive manner, shielding his face, and said, "calm down man, calm down." Pannell never saw Grogan touch appellant or threaten him. She never saw Grogan with a weapon.

Pannell ran back into the store. As she was opening the door, she heard a gunshot. She then heard a second shot, "back to back" with the first shot. Pannell turned and saw appellant run to his car, jump in, and speed away.

---

[1] Witnesses characterized the exchanges as an argument.

At trial, appellant testified he was not mad during the initial argument with Grogan. He claimed he drove away and then returned to the store because he had forgotten to buy some cigarettes. He denied returning to his home. Appellant testified he entered the store and told Grogan that they needed to talk outside. Although he admitted having a gun in his pocket at this point, appellant claimed he was carrying the weapon because he intended to sell it later that day.

Once they were outside, appellant asked Grogan why he was "disrespecting" him. Appellant admitted he screamed at Grogan, who responded, "why was [appellant] yelling now." Appellant claimed Grogan threatened to beat him up, as he had done previously, and then Grogan swung at appellant. Pannell, however, did not observe Grogan swing, although appellant claimed she would have seen it.

Appellant testified that, in response to the attempted assault, he pulled out his gun and pointed it at Grogan's head. He claimed that, as Pannell went into the store, Grogan rushed him and grabbed the gun. They struggled and, as appellant pushed the gun down, it discharged. Grogan fell on top of appellant and the "gun went off again" as they were "going to the ground." Appellant believed the first shot went into Grogan's leg. Appellant got out from under the body and fled the scene. He surrendered to the police thirteen days later.

Joseph Finney, a defense witness, testified he observed a struggle between two men at the Foodway that morning. He saw them wrestling and fall to the ground in a manner that he described as "playing." Finney heard two shots while the men were on the ground. Finney recalled four or five seconds elapsed between the two shots. He was certain he saw one of the men get up, run to a car, and get into the backseat of a car. He acknowledged he was "a pretty good distance away" from the store.

The autopsy of the victim revealed two entrance wounds and two exit wounds from gunshots. One had entered "above his left eye at the lower margin of the eyebrow and exited the

back of his head." Another shot had entered the right thigh in the front inside and exited the back of the right thigh. Based on gunpowder stippling, the medical examiner opined that the shot to the head was fired from up to two feet away, but was not a contact wound. The head shot traveled slightly upward; the trajectory of the shot to the leg was slightly downward. The shot to the leg was fired from several inches to approximately two feet away. The medical examiner could not determine which shot occurred first. The shot to the head was fatal.

ANALYSIS

On appeal appellant contends the evidence was not sufficient to prove premeditation and deliberation, elements of first-degree murder. Instead, he asserts the evidence is consistent with a finding that he intended only to brandish a firearm and intimidate Grogan. After a struggle, he argues, the gun accidentally discharged twice.

When reviewing sufficiency arguments on appeal, we review the evidence and the inferences fairly deducible from that evidence in the light most favorable to the Commonwealth. Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000). We will not disturb the fact finder's verdict unless that decision was plainly wrong or without evidence to support it. Ashby v. Commonwealth, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000). In determining whether the verdict was plainly wrong or not supported by the evidence, we examine both the direct and circumstantial evidence in the record. Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989); Hagy v. Commonwealth, 35 Va. App. 152, 159, 543 S.E.2d 614, 617 (2001).

An essential element of a first-degree murder conviction is premeditation, i.e, the development in the mind of the murderer of the specific intent to kill prior to the act itself. Code § 18.2-32 (defining first-degree murder); Betancourt v. Commonwealth, 26 Va. App. 363, 372-73, 494 S.E.2d 873, 877 (1998) (defining premeditation). This specific intent "may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to

kill." Giarratano v. Commonwealth, 220 Va. 1064, 1074, 266 S.E.2d 94, 100 (1980). Whether premeditation existed is a question of fact to be resolved by the finder of fact. Schmitt v. Commonwealth, 262 Va. 127, 143, 547 S.E.2d 186, 197 (2001), cert. denied, 534 U.S. 1094 (2002); Bailey v. Commonwealth, 259 Va. 723, 749, 529 S.E.2d 570, 585, cert. denied, 531 U.S. 995 (2000).

The Commonwealth's evidence proved appellant and Grogan were engaged in an argument. While Grogan "was playful," appellant became angry and told Grogan, "I'll be back." Witnesses saw appellant near his home, where he admitted he normally keeps a gun, immediately after this exchange. Appellant then returned to the market and asked Grogan to step outside. An argument ensued, with appellant screaming, yelling, and asking why Grogan had "disrespected" him. Appellant went for his gun without provocation, aimed it at Grogan's head, and shot him twice in rapid succession.

While appellant testified he pulled out the gun in response to an assault by Grogan, Pannell's testimony refuted this claim. Appellant also claimed the gun accidentally discharged during a struggle. He testified he did not intend to shoot Grogan, only scare him. The trial court, as fact finder, can reject appellant's explanations because:

> "The credibility of the witnesses and the weight accorded the
> evidence are matters solely for the fact finder who has the
> opportunity to see and hear that evidence as it is presented."
> Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d
> 730, 732 (1995). The trier of fact is not required to accept a
> party's evidence in its entirety, Barrett v. Commonwealth, 231 Va.
> 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and
> disbelieve in part or in whole the testimony of any witness.
> Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d
> 823, 830 (1991).

Yellardy v. Commonwealth, 38 Va. App. 19, 21-22, 561 S.E.2d 739, 741 (2002). In convicting him of first-degree murder, the trial court clearly chose to disbelieve appellant and his witness.

Having determined appellant's testimony was false, the trial court could consider this testimony as evidence of appellant's consciousness of guilt and, thus, of guilt itself. Rollston, 11 Va. App. at 548, 399 S.E.2d at 831. Further, appellant fled the scene of the shooting and remained at large for thirteen days. Flight by a defendant after the commission of a crime is probative evidence of guilt of that crime. Clagett v. Commonwealth, 252 Va. 79, 93-94, 472 S.E.2d 263, 271 (1996); Boykins v. Commonwealth, 210 Va. 309, 313-14, 170 S.E.2d 771, 774 (1969). Finally, appellant admitted he pointed a loaded gun at Grogan's head. The trial court could infer appellant intended the logical and probable consequences of such an act. See Webber v. Commonwealth, 26 Va. App. 549, 565, 496 S.E.2d 83, 90 (1998).

Appellant complains that the failure of the Commonwealth to develop evidence proves he did not intend to kill Grogan. He contends, if the Commonwealth had tested Grogan's hands for gunpowder residue, the results would have proved Grogan did grab the gun. This result, he argues, would support his contention that the gun went off during a struggle. However, assuming Grogan had residue on his hands, such evidence would not necessitate overturning the convictions. The trial court credited Pannell's testimony that Grogan made no aggressive movements toward appellant. If Grogan did grab the gun, he did so only after appellant was pointing the gun at his head. Therefore, the court would not be forced to accept appellant's description of the incident, even if gunpowder residue were on the victim's hands.

Upon this evidence, the trial judge was entitled to conclude appellant became angry at Grogan, drove home to retrieve his gun, returned to Foodway, pointed a loaded gun at Grogan's head with the intent to shoot and kill him, and ultimately accomplished this plan. Thus, the evidence was sufficient to prove beyond a reasonable doubt that the shooting was intentional and

premeditated and that appellant was guilty of the charged offense.  We affirm the judgment of the trial court.

Affirmed.