COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


JASON MICHAEL JONES

                                                MEMORANDUM OPINION* BY
v.        Record No. 1670-03-1                  JUDGE JAMES W. BENTON, JR.
                                                    NOVEMBER 16, 2004

COMMONWEALTH OF VIRGINIA



          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                        Von L. Piersall, Judge

          S. Jane Chittom (Felipita Athanas; Public Defender Commission, on
          briefs), for appellant.

          Virginia B. Thiesen, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


        The trial judge convicted Jason Michael Jones of maliciously wounding his mother and

of felony child neglect of his eight-year-old son.  Jones appeals his conviction for felony child

neglect and contends the evidence was insufficient to prove his conduct was so "gross, wanton,

and culpable as to show a reckless disregard for human life," as required by Code

§ 18.2-371.1(B)(1).  We disagree and affirm the conviction.

                                           I.

        Lori Ann Jones, Jones's mother, had custody of Jones's son, age eight, and her other

grandson, age six.  In the early evening of October 25, 2002, Jones arrived at his mother's home

with his teenage nephew and asked his mother if he could take his son and her other grandson to

visit a relative, promising to return them by 11 p.m.  Jones's mother refused his request because

the boys' mother had planned to take the boys for haircuts and eyeglasses early the next

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

morning. Jones insisted that he be allowed to take the boys with him. After he was unable to contact the boys' mother and his mother denied his repeated requests to take the boys with him, Jones became angry. Jones and his mother began yelling and hitting each other. Jones hit his mother in the face and stomach with his fists. During the struggle, one of Jones's punches missed his mother and hit his son on the forehead. As Jones was hitting his mother, she fell onto a couch. He continued to hit her until she fell to the floor, where she laid bleeding and unconscious.

As Jones and his nephew prepared to exit the house, Jones said his mother "got what she deserved," and he told his son, "don't call the police." He then left the two boys in the house with his unconscious mother.

Despite Jones's directive, his son dialed 911 and sought assistance. It was then 8:37 p.m. Police and an ambulance responded a few minutes later and took Jones's mother to the hospital where she was treated for a collapsed lung, two black eyes, and other injuries to her face. When police interviewed her almost two weeks later, her eyes were still bruised and she needed assistance sitting up in bed.

The trial judge convicted Jones of felony child abuse.

II.

Code § 18.2-371.1(B)(1) provides that "[a]ny parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony." Unlike Code § 18.2-371(A), which makes it a crime for "any parent, guardian, or other person responsible for the care of a child" to willfully permit "serious injury to the life or health of such child," subsection (B)(1) of the statute "does not require that a child actually suffer serious injury as a result of a defendant's acts or omissions."

-2-

Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 214 (2004). The structure of subsection (B)(1), in particular, the absence of an injury requirement and the authorization of a less severe punishment, "demonstrates a legislative intent to prohibit conduct that also has the potential for endangering a child's life." Id. (emphasis added). Thus, as Duncan instructs, the statutory element of "'reckless disregard [for human life]' can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life." 267 Va. at 385, 593 S.E.2d at 214.

Jones contends the evidence failed to prove "he committed a willful act or omission in the care of his son that was 'so gross, wanton, and culpable as to show a reckless disregard' for the child's life." We disagree.

To be "willful," the proscribed conduct must be "knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose." Duncan, 267 Va. at 384-85, 593 S.E.2d at 214. This *mens rea* requirement "contemplates an intentional, purposeful act or omission in the care of a child by one responsible for such child's care." Id. In this case, the *mens rea* was established by evidence proving Jones left the boys alone with their injured grandmother while instructing his son not to call for help. He purposefully left his eight-year-old son to attend a seriously injured and bleeding person. Furthermore, his directive demonstrated his lack of concern for the dangers inherent in leaving an eight-year-old child to care for a seriously injured, unconscious adult at nighttime. This evidence demonstrated a bad purpose that satisfies the statutory element of willfulness.

Focusing on the element of "gross, wanton, and culpable," Jones correctly notes that the express language of Code § 18.2-371.1(B) requires proof beyond simple negligence. "Gross, wanton, and culpable" is the standard that elevates the conduct into the realm of criminal

-3-

negligence. <u>Conrad v. Commonwealth</u>, 31 Va. App. 113, 120-21, 521 S.E.2d 321, 325 (1999).

<u>See</u> <u>also</u> <u>Cable v. Commonwealth</u>, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992) (interpreting

"gross, wanton, and culpable" in the context of involuntary manslaughter); <u>Mosby v.

Commonwealth</u>, 23 Va. App. 53, 59, 473 S.E.2d 732, 735 (1996) (holding that the imposition of

a criminal penalty must rest upon more than simple negligence).

Jones argues, however, that <u>Snow v. Commonwealth</u>, 33 Va. App. 766, 774-75, 537

S.E.2d 6, 10-11 (2000), and <u>Ellis v. Commonwealth</u>, 29 Va. App. 548, 555, 513 S.E.2d 453, 457

(1999), support the proposition that to convict him under the felony child neglect statute the

evidence must prove (1) he knew he was exposing his son to a substantial risk of serious injury

and (2) a condition of actual endangerment existed.[1]  Jones argues further that any possible risk

was minimized because his son was resourceful enough to call 911, knew how to ask for help

from neighbors, and also knew how to feed and care for himself.

A comparison of <u>Ellis</u> and <u>Snow</u> demonstrates how we have interpreted the statute's

requirements.  In <u>Snow</u>, the appellant was convicted of felony child neglect after driving an

automobile with four children in excess of one hundred miles per hour while police chased him.

Affirming Snow's conviction, we held that Snow's driving was a willful act of exposing the

children to substantial risk of injury and was a "dangerous or unlawful activity" that was "so

gross, wanton, and culpable as to show a reckless disregard for human life."  33 Va. App. at 775,

537 S.E.2d at 10-11 (2000).

In <u>Ellis</u>, the appellant lit a stove burner and then, forgetting the burner was on, left her

apartment with her two children sleeping inside.  The burner started a fire that seriously injured

both children.  29 Va. App. at 551-52, 513 S.E.2d at 455.  We reversed Ellis's conviction

---

[1] Jones does not argue, and we do not decide, the issues whether the statute requires proof of subjective awareness of potential danger or whether a reasonable person knew or should have known of the potential for danger or harm.

because she was unaware of the danger when she left her apartment. She had not willfully exposed her children to a substantial risk of injury within the meaning of the statute because no "evidence support[ed] the conclusion that she acted with knowledge or consciousness that her children would be injured as a likely result of her departure to visit a neighbor for a short period of time." Id. at 555, 513 S.E.2d at 456-57. Although Ellis was inattentive and negligent, her inadvertent act "could not be equated with actions taken willfully, thus making them subject to criminal penalty." Id. at 556, 513 S.E.2d at 457.

Jones is correct in asserting that in both Snow and Ellis the risks to the children had materialized. In Snow, there was a substantial risk of an accident while driving at a high rate of speed, while in Ellis, an actual injury resulted from the fire. We disagree with Jones's assertion, however, that, when he left the apartment, there was neither a risk to his son nor a consciousness of the risk. Convicting Jones, the trial judge found as follows:

> [H]is actions were to leave two small children in a house alone with a woman who's responsible for their care who he'd knocked unconscious and left bleeding on the floor. He'd told the children not to call for help and . . . there's no evidence he made any provisions whatsoever for caring for these children; and here are two children in the middle of the night left in the house to tend to their own care for an indeterminate period. There was no telling how long they would be there alone and in what, what could happen to two little children left in the house alone.

A reasonable fact finder could infer, based on common knowledge, that there were inherent dangers in leaving the boy alone that night. See Duncan, 267 Va. at 386, 593 S.E.2d at 214 (noting that the fact finder could infer, by common knowledge, the dangers "inherent in the situation"). That the risks had not yet materialized does not mean that those risks were absent. Jones's son had just witnessed the brutal beating of his grandmother, who was rendered unconscious and unable to care for the two boys. When Jones ordered his son not to call police, the son was then left alone to care for his six-year-old brother and his seriously injured

-5-

grandmother. Had he obeyed his father's command, he would have been left to fend for himself, his grandmother, and his brother through the night and until an adult arrived the next day.

The fact that Jones's son was not seriously injured and showed remarkable composure in ignoring Jones's directive to not seek help does not remove Jones's conduct from the prohibitions of the statute. The fact finder could reasonably conclude that the risks to an eight-year-old boy left in these circumstances were compounded by the need to care for his badly injured and unconscious grandmother. In addition to the obvious reasons a caregiver would not leave an eight year old unattended in the nighttime (for example, the potential for fire, injury, or accident), the boy was exposed to the potential of having to go out by himself in the night to get help for his grandmother and, thereby, exposing himself to greater risks. As in Duncan, the danger was inherent in the situation and could be inferred by common knowledge. The evidence was sufficient to prove Jones willfully disregarded these dangers by telling his son not to call the police.

We hold, therefore, that the evidence was sufficient to prove beyond a reasonable doubt that Jones willfully instructed his son not to seek help and willfully omitted to provide care when he left his son alone to care for the six-year-old brother and his seriously injured grandmother and further that this conduct "was so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B)(1).

For these reasons, we affirm Jones's conviction.

Affirmed.