COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Beales and Huff
Argued at Richmond, Virginia

KEYON DAMONT CARRINGTON

OPINION BY
v.      Record No. 2559-10-2                    JUDGE GLEN A. HUFF
                                                FEBRUARY 14, 2012

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Catherine French, Supervising Assistant Public Defender (Office
of the Public Defender, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.

Keyon Damont Carrington ("appellant") appeals his conviction of child neglect, in

violation of Code § 18.2-371.1(A).[1] Following a bench trial in the Circuit Court of the City of

Richmond ("trial court"), appellant was sentenced to ten years' incarceration with four years

suspended for the child neglect conviction. On appeal, appellant contends that the trial court

erred in finding the evidence sufficient to support a conviction for child neglect where appellant

was not a parent, guardian, or other person responsible for the care of the child. For the

following reasons, we affirm the trial court's conviction.

I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

----

[1] Appellant's convictions of malicious wounding and assault and battery against a family
member are not before us on this appeal.

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

In April 2010, appellant was dating and living with Monique Hawthorne ("Monique"), her twelve-month-old son K.H.,[2] Monique's sister Tarnita Hawthorne ("Tarnita"), and appellant's brother Cornelius Carrington. On April 14, 2010, Monique was sitting on the couch in her living room attempting to give K.H. a bottle because he was crying. K.H. refused to take the bottle, and threw it on the floor. Appellant, irritated by the crying, came into the living room from the kitchen, and attempted to give K.H. the bottle. Monique told appellant that K.H. did not want the bottle, but was just sleepy. Appellant then turned K.H. over on his stomach stating K.H. would go to sleep faster on his stomach. When K.H. did not stop crying, appellant punched K.H. in the thigh of his left leg three times. K.H.'s leg became swollen, and made a popping noise when it was moved.

Appellant then called his brother Adrian Carrington ("Adrian") who came to the apartment and drove them to Richmond Community Hospital. Appellant, Monique, Tarnita, and K.H. were subsequently transported to the Medical College of Virginia ("MCV") where Dr. Victoria Kuester, a pediatric orthopedic surgeon, treated K.H. for a "transverse femur fracture" to K.H.'s left leg. On several of the hospital forms, appellant was listed as K.H.'s guarantor as well as K.H.'s father.

Detective Edward Aeschlimann ("Aeschlimann"), with the Richmond Police Department, and Georgi Fisher ("Fisher"), with the Richmond Department of Social Services, arrived at MCV to investigate K.H.'s injuries. In separate interviews at the hospital, Monique, Tarnita, and

---

[2] The child is referred to as "K.H." based on the transcript although his initials are actually "Q.H."

appellant initially told the medical personnel, the police, and social services that K.H. had sustained the injury to his leg when he fell off the bed and landed on a toy while Monique was in the shower and appellant was watching K.H. Appellant also told Fisher at the hospital that he was K.H.'s father. At some point, appellant became angry with Monique, and pushed her while Fisher was in the hospital room with them. Appellant was subsequently arrested for assault and removed from the hospital.

Later that evening, Fisher drove Monique to her apartment so Monique could pick up some items for K.H. Prior to doing so, Tarnita had told Fisher to get Monique to tell her the truth about what had actually happened to K.H. While Fisher drove Monique to her apartment, Fisher asked Monique what the truth was, and Monique told Fisher that appellant had punched K.H.'s leg causing the injury. Monique told Fisher that she had been afraid to tell the truth because appellant had threatened that he would kill her if she told anyone the truth. Fisher then advised Aeschlimann of what Monique had told her in the car, after which Aeschlimann spoke with Monique again.

At trial, Dr. Kuester testified that K.H.'s injury was indicative of a blunt force trauma to his thigh, and was inconsistent with a fall off a bed the height of appellant's bed. Further, Monique testified that she and Tarnita told everybody that K.H. hurt himself falling off the bed while Monique was in the shower, instead of the truth that appellant punched K.H., because she was afraid of appellant. Monique stated that she was afraid of appellant based on appellant's previous actions in which appellant had hurt Monique, and appellant's threat that he would kill her if she did not tell this version.

After the Commonwealth's case-in-chief, appellant moved to strike the evidence of the child neglect charge on the ground that appellant was not a guardian or person responsible for the care of the child, which the trial court denied. Adrian then testified that it was not uncommon for

appellant to contact him for advice on caring for K.H. and that appellant asked him to come over that night to check on K.H. Adrian also stated that he told appellant K.H.'s injury did not look like K.H. fell off a bed.

At trial, appellant denied striking K.H., and testified that K.H. fell off the bed around 7:00 p.m. Appellant agreed on cross-examination that although he was not K.H.'s father, he called K.H. his son, helped take care of K.H., and "looked out for [K.H.]" Appellant stated that he helped by feeding and bathing K.H., and by putting K.H. to sleep. At the conclusion of the evidence, appellant renewed his motion to strike on the same grounds, which the trial court denied noting Adrian's testimony that appellant cared for K.H., asked Adrian to come over to check on K.H., and routinely asked Adrian about K.H. This appeal followed.

## II. STANDARD OF REVIEW

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Wood v. Commonwealth, 57 Va. App. 286, 296, 701 S.E.2d 810, 815 (2010) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). Under this standard, the reviewing court asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

"Statutory interpretation presents a pure question of law and is accordingly subject to de novo review by this Court." Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006) (citing Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003)).

III. ANALYSIS

On appeal, appellant contends that the trial court erred in finding the evidence sufficient to support a conviction for child neglect where appellant was not a "person responsible for the care of [the] child." Code § 18.2-371.1(A). Specifically, appellant argues that he was not responsible for the care of K.H. since he was not the sole adult present with K.H. during the incident.

> "When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

Scott v. Commonwealth, 58 Va. App. 35, 48-49, 707 S.E.2d 17, 24 (2011) (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)). "Accordingly, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" Id. at 49, 707 S.E.2d at 24 (alteration in original) (quoting Evans, 280 Va. at 82, 695 S.E.2d at 176).

Code § 18.2-371.1(A) provides, in pertinent part,

> [a]ny parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child shall be guilty of a Class 4 felony.

Code § 18.2-371.1 "requires proof only that a person is 'responsible for the care of a child.'" Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 10 (2000). "[O]ne may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." Id.

Appellant contends that the holding in Snow requires that an individual be left alone with a child in order for them to be responsible for the child. Based on this interpretation, appellant specifically contends that since Monique also was with K.H. at the time of the injury, she actually was responsible for K.H.'s care and not appellant. This Court, however, declines to read Snow that narrowly as neither this Court's holding in Snow nor the plain language of the statute requires that a person be the sole adult responsible for the care of a child in order to be convicted under Code § 18.2-371.1(A).

Turning to the plain language of the statute, Code § 18.2-371.1(A) applies to "*any . . . person responsible for the care of a child*," which is the only proof required. (Emphasis added.); see Snow, 33 Va. App. at 773, 537 S.E.2d at 10 (noting Code § 18.2-371.1 "requires proof only that a person is 'responsible for the care of a child'"). Nothing in this language conveys that an individual cannot have joint responsibility with another individual for the child, or that an individual cannot be responsible if a parent or guardian is also present at the time of the child's injury. Rather, the statute prohibits certain acts by "*any . . . person responsible for the care of a child . . . .*" Code § 18.2-371.1(A) (emphasis added).

At the time of K.H.'s injury, appellant was a person responsible for the care of K.H. Although appellant was not K.H.'s biological father, he held himself out as the father, "looked out" for K.H., and even helped feed, bathe, and put K.H. to sleep. In addition, appellant would call Adrian to get advice on caring for K.H. On the evening of the incident, appellant had attempted to give K.H. a bottle prior to turning K.H. over on his stomach and then punching him in the leg. In so doing, appellant was responsible for the care of K.H. through his "voluntary course of conduct . . . ." Snow, 33 Va. App. at 773, 537 S.E.2d at 10. For these reasons, we hold the trial court did not err in finding appellant was a person responsible for K.H.'s care through

his voluntary course of conduct.  Therefore, we hold that the trial court did not err in holding the evidence sufficient to find appellant guilty of child neglect, and affirm.

Affirmed.