COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


KEIRON CHARDEL POLLARD

MEMORANDUM OPINION* BY
v.        Record No. 0753-21-1        JUDGE VERNIDA R. CHANEY
SEPTEMBER 27, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
Richard H. Rizk, Judge

Richard G. Collins (Collins & Hyman, P.L.C., on brief), for
appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial in the Circuit Court of York County ("trial court"), Keiron Chardel

Pollard ("Pollard") was convicted of felony hit and run, felony child endangerment, and reckless

driving.[1]  On appeal, Pollard contends that the evidence is insufficient to support his conviction for

felony hit and run because it fails to show he had actual knowledge of the accident or resulting

injury.  Additionally, Pollard argues the evidence is insufficient to support his conviction for felony

child endangerment because he did not have any of the statutorily enumerated relationships with the

child.[2]  For the following reasons, this Court affirms Pollard's convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth also charged Pollard with driving while intoxicated and maiming
while driving while intoxicated.  The trial court granted Pollard's motion to strike and dismissed
these charges.

[2] Pollard does not challenge his conviction for reckless driving.

## I. BACKGROUND

On September 19, 2020, in the early afternoon, Richard Hogue ("Hogue") was hit by a speeding vehicle while he was working in a construction zone on Interstate 64. Hogue and the other construction workers wore neon yellow safety vests with reflective stripes so they could be easily seen by drivers. Hogue also placed safety cones around his parked work truck and turned on the flashing light on top of the truck so it could be seen from a distance.

To avoid heavy traffic, a blue sport utility vehicle (SUV) left the open highway lanes and entered the construction work zone. Although the maximum speed limit in the work zone was ten miles per hour, the SUV traveled at a speed of seventy to ninety miles per hour. The SUV swerved to miss a construction vehicle, almost hit the barrier wall between the construction zone and the travel lanes, and struck an orange construction bag that "blew apart." The SUV temporarily slowed to regain control and continued speeding down the road towards Hogue.

Hogue saw the SUV speeding towards him as he was marking an underground utility line with orange paint. Hogue heard the SUV's brakes, and another eyewitness saw the SUV's brake lights before the SUV hit Hogue. Hogue tried to run and dive out of the way, but the right front end of the SUV hit Hogue's legs, "spun him like a top," and threw him to the ground. Witnesses heard Hogue's agonized screams as Hogue heard onlookers yelling, "He hit him, he's leaving!" The SUV driver did not stop to check on Hogue. Another driver who witnessed the SUV strike Hogue reported the collision to 911.

Hogue testified that he "could clearly see the driver inside" the SUV before it hit him. Hogue saw the SUV driver looking at him before he was hit. At trial, Hogue identified Pollard as the SUV driver who hit him. Three eyewitnesses identified Pollard's SUV as the vehicle that hit Hogue. Additionally, a police photograph showed orange paint spatter on the front of Pollard's SUV after the collision.

About one-half mile from the accident, the SUV stopped, and witnesses saw Pollard talking to a driver in another vehicle within the construction zone. A witness called the police and reported that the SUV had come to a stop further down the road. Another driver who saw the SUV speeding through the construction zone took photographs of the SUV's license plate.

Trooper Gary approached the driver of the SUV, whom she confirmed to be Pollard by his license and registration. Pollard informed Trooper Gary that he had stopped because he ran out of gas; he denied being involved in an accident. Trooper Gary saw another man in the front passenger seat and a four-year-old child in a booster seat in the backseat of the SUV. Although Trooper Gary saw no evidence that the SUV had been damaged in an accident, she obtained a written statement from Pollard. Pollard wrote that he was traveling approximately forty miles per hour and that he entered the work zone to get past traffic. Pollard also wrote that he moved to the left side of the work zone when a worker walked from the wall to the inside lane.

Pollard further admitted to Trooper Nieradka, an officer assisting Trooper Gary, that he had driven through the construction zone to avoid heavy traffic. While speaking with Pollard, Trooper Nieradka noticed a faint odor of alcohol. After his arrest, Pollard admitted to the magistrate that he had driven through the construction zone to bypass traffic and had made eye contact with Hogue, but he claimed he did not think he had hit Hogue.

The collision caused Hogue to suffer serious injuries. Hogue testified that when the SUV hit him, "all the air came out of [his] lungs and [he] flew backwards." After he hit the ground, Hogue was in extreme pain and was unable to get up. Hogue saw that his right foot was turned backward. Hogue was hospitalized for five days after the collision and underwent several surgeries on both legs. He had a titanium rod inserted in his right shin and an ACL replacement on his left leg. Subsequently, Hogue needed to wear a brace on his left leg. Following the surgeries, Hogue required inpatient therapy for seven days and outpatient therapy twice a week. Hogue also needed

surgery on his stomach after suffering from extreme diarrhea for about five months following the accident. At the time of the trial, Hogue testified that he was in constant pain, was reduced to limited duty at his employment, and required at least six more months of physical therapy. Hogue also stated that he could only sleep on his couch instead of his bed, struggled to use stairs, experienced numbness in his right leg, and could not run, kneel, or play with his four-year-old daughter on the floor.

The trial court convicted Pollard of felony child endangerment, felony hit and run, and reckless driving. As to the child endangerment conviction, the trial court ruled that as the driver and person in control of the SUV, Pollard was responsible for the care of the child sitting in the vehicle. Moreover, Pollard's actions of driving at a high rate of speed through a construction work zone were "so willful and gross and wanton as to show an absolute reckless disregard for the well-being of the child." For the felony hit and run conviction, the trial court found that Hogue sustained significant injuries and that Pollard knew—as demonstrated by his "driving mannerisms"—that his SUV was the cause of those injuries, yet he failed to stop.

## II. ANALYSIS

### A. Standard of Review

"When presented with a sufficiency challenge in criminal cases, [this Court] review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all fair inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. Felony Hit and Run

Pollard contends that the trial court erred in convicting him of hit and run because the evidence was insufficient to establish that he knew an accident had occurred. Code § 46.2-894 provides, in relevant part:

> The driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in § 46.2-888, and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information . . . . The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

"If the accident resulted in injury or death, failure to comply with Code § 46.2-894 is a felony." *Neel v. Commonwealth*, 49 Va. App. 389, 394 (2007) (citing Code § 46.2-894).

"An element of the charged crime, commonly referred to as 'hit and run,' is actual knowledge that an accident occurred." *Tooke v. Commonwealth*, 47 Va. App. 759, 766 (2006). "Actual knowledge is a fact that may be proved by direct or circumstantial evidence." *Id.* "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Moreover, "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Pollard does not dispute the severity of Hogue's injuries, but asserts that the evidence was insufficient to establish that he had knowledge that an accident had occurred as he sped through the construction zone. Pollard highlights that the responding officers did not observe "any signs of damage to the vehicle that would indicate a serious collision." Pollard also emphasizes that he cooperated with the officers but consistently denied that an accident had occurred. Pollard concludes the evidence demonstrates that he "lacked 'actual knowledge' that an accident occurred." Pollard further contends that he "could not reasonably have believed an injury resulted from an accident of which he was unaware."

Pollard's appeal turns on whether the circumstantial evidence and reasonable inferences therefrom support the trial court's factual finding that Pollard had actual knowledge of the accident.

We conclude that—when properly viewed in the light most favorable to the Commonwealth—the evidence is sufficient to allow a rational fact-finder to conclude that Pollard had such knowledge. Pollard drove the SUV in a construction zone at a high rate of speed. Pollard applied the brakes just before his SUV hit Hogue. Moreover, Pollard made eye contact with Hogue and was looking at Hogue just before the SUV hit him. Pollard's SUV hit Hogue so forcefully that it "spun him like a top" and threw him to the ground. At the time of the accident, Hogue was using orange paint to mark the road, and the front of Pollard's SUV was bespattered with orange paint. Three witnesses saw the front of Pollard's SUV hit Hogue. In light of these circumstances, a rational fact-finder could reject as unreasonable Pollard's claim that he was not aware an accident had occurred. *See Commonwealth v. Moseley*, 293 Va. 455, 465 (2017) (holding that a conviction should be affirmed where a rational fact-finder "could have rejected the defendant's theory of innocence as being unreasonable, based 'upon consideration of all the evidence and the reasonable inferences that flow from that evidence'" (quoting *Hudson*, 265 Va. at 517)).

Because we find the evidence was sufficient to establish that Pollard had actual knowledge of the accident, we reject Pollard's argument that he could not reasonably believe that an injury had occurred. To be guilty of felony hit and run, "the Commonwealth must prove that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case." *Payne v. Commonwealth*, 277 Va. 531, 544-45 (2009) (quoting *Kil v. Commonwealth*, 12 Va. App. 802, 811 (1991)). For the reasons stated above, there is sufficient evidence to support the trial court's conclusion that Pollard had knowledge of the accident. A rational fact-finder could have concluded from the evidence that a reasonable person in these circumstances—specifically, a person aware of having just forcibly struck a construction worker with his SUV—also would have known that the collision injured the construction worker.

## C. Felony Child Endangerment

Pollard contends that the trial court erred in convicting him of felony child endangerment because the evidence was insufficient to establish that he was related to the child in any way specified by Code § 18.2-371.1(B)(1). Code § 18.2-371.1(B)(1) provides:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

Whether the requisite statutory relationship exists at the time of the offending conduct is a question of fact to be determined on a case-by-case basis. *See Sadler v. Commonwealth*, 276 Va. 762, 765 (2008) (holding that whether a defendant has a supervisory or custodial relationship with a minor under Code § 18.2-370.1 is a matter of fact). "We examine a trial court's factfinding 'with the highest degree of appellate deference.'" *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 333 (2021) (quoting *Whitfield v. Commonwealth*, 57 Va. App. 396, 403 (2010)).

Pollard asserts that "[t]he evidence showed that a child was present in the car with [a]ppellant and another adult but did not establish anything more." Citing, for comparison, Code § 18.2-270(D)—providing a sentencing enhancement for driving while intoxicated while transporting a minor—Pollard argues that the General Assembly only intends for drivers to be responsible for the care of minors when that role is expressly stated. Relying on the fact that there was another adult passenger in the car he was driving, Pollard further contends, citing *Snow v. Commonwealth*, 33 Va. App. 766 (2000), that a driver is only responsible for the care of minor passengers under Code § 18.2-371.1 when the driver is the only adult in the vehicle. We reject both of these contentions.

In *Snow*, this Court affirmed the defendant's conviction under Code § 18.2-371.1 upon determining that the defendant was the driver of a vehicle and involved in a high-speed chase while

transporting three minor passengers. *Snow*, 33 Va. App. at 773. Although the defendant was the uncle of the children, he argued that he was not responsible for their care. *Id.* at 772. This Court rejected the defendant's argument, emphasizing that the defendant "voluntarily took control of the vehicle and drove away knowing that the juveniles were in the vehicle." *Id.* at 773. Pollard, in a misdirected effort to distinguish his case from the facts in *Snow*, contends that the presence of another adult in the vehicle he was driving eliminates his position as a "person responsible for the care of a child." Even if we accept Pollard's characterization of the facts of *Snow*, that case does not hold that drivers are relieved of their responsibility for minor passengers under Code § 18.2-371.1 by the mere presence of additional adult occupants.

As the driver of a vehicle in which a four-year-old child was a passenger, Pollard exercised care and control over that child, even in the presence of another adult. We reject Pollard's argument that the presence of another adult automatically eliminates his responsibility because there is nothing in Code § 18.2-371.1 that conveys "that an individual cannot have joint responsibility with another individual for the child." *See Carrington v. Commonwealth*, 59 Va. App. 614, 621 (2012) (holding that an individual can be jointly responsible for the care of a child under Code § 18.2-371.1 even when the other individual is the child's parent or guardian). Moreover, as Pollard concedes, one may assume the responsibility for care of a child "by a voluntary course of conduct and without explicit parental delegation." *Snow*, 33 Va. App. at 773. Pollard's voluntary conduct of driving the SUV with the child in the backseat made him a "person responsible for the care" of the child in the SUV. Therefore, the requirement of Code § 18.2-371.1(B)(1)—that Pollard be responsible for the care of the endangered child—is satisfied.[3]

---

[3] Even under Pollard's reading of the statute, the evidence is sufficient. Trooper Gary testified as follows, without objection:

Pollard further asserts that Code § 18.2-371.1(B)(1) "clearly requires something more than presence" and "[i]f the General Assembly intended that any person driving a vehicle with a child present qualified under this statute, it would have said so." Pollard misinterprets Code § 18.2-371.1(B)(1), which applies to any "person responsible for the care of a child under the age of 18," and this includes any person who drives a motor vehicle knowing that a child is in the vehicle. Thus, given the undisputed evidence that Pollard knowingly drove a motor vehicle with a child passenger, the evidence is sufficient to support a finding that Pollard was a "person responsible for the care of a child." Therefore, given Pollard's extremely reckless driving, the evidence is sufficient to support a conviction for felony child endangerment under Code § 18.2-371.1(B)(1).

### III. CONCLUSION

The evidence is sufficient for a rational fact-finder to find proof of the essential elements of felony hit and run and felony child endangerment. Accordingly, this Court affirms the convictions.

*Affirmed.*

---

Q: What, if anything, did Mr. Pollard point out with regard to the passengers?
A: That there was -- well, a child that was four, and then the other passenger was one person over the age of 21.
Q: Okay. So with respect to the child that you saw and the *statement that Mr. Pollard's child was four*, was that about right?
A: That sounds about right.

(Emphasis added).